# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 40002

CUMIS INSURANCE SOCIETY, INC., )
                                          )
       **Plaintiff-Appellant,** )

v. )
                                            )

**WADE MASSEY and CAPITOL WEST APPRAISALS,** )
                                            )
       **Defendants-Respondents.** )

Boise, November 2013 Term

2014 Opinion No. 14

Filed: February 10, 2014

Stephen Kenyon, Clerk

---

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. Hon. Juneal C. Kerrick, District Judge.

The judgment of the district court dismissing CUMIS's complaint is <u>vacated</u>.

Wilson & McColl, Boise and Collins & Coldwell, LLC, Denver, Colorado for appellant. Patrick Collins argued.

Kelly Talboy & Simmons, PA, Boise, for respondents. Michael E. Kelly argued.

---

HORTON, Justice.

This appeal arises from a negligence action filed by CUMIS Insurance Society (CUMIS), the subrogee of Icon Federal Credit Union (Icon), against Wade Massey and his business, Capitol West Appraisals (Capitol). All parties moved for summary judgment. The district court granted Massey's motion and dismissed CUMIS's claims after deciding CUMIS failed to establish that Massey owed a duty of care to Icon. CUMIS timely appealed. We vacate the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2007, Steven and Valerie Hruza sought to obtain a loan from Clearwater Mortgage (Clearwater). Clearwater requested Massey to perform an appraisal of the Hruzas' real property located in Caldwell, Idaho. Massey is the owner of Capitol and is a professional appraiser licensed to practice in Idaho. Massey performed the appraisal and sent a Summary Appraisal Report (the Appraisal) to Clearwater indicating that market value of the property was $1,150,000

1

as of June 13, 2007. However, Clearwater decided to deny the Hruzas' loan application before considering the Appraisal. Massey admits that both he and Clearwater were aware that the Appraisal contained errors. The president of Clearwater, Ernie Menchaca, and Massey agreed that Massey would not fix the errors and Clearwater would not pay Massey for the appraisal.

Then, in September, 2007, the Hruzas submitted a loan application for $250,000 to Idahy Federal Credit Union, now known as Icon.[1] Icon approved the loan, secured by a deed of trust on the Hruza property, on or around September 13, 2007. Icon then sent an $800 check, dated September 18, 2007, to Capitol. Capitol accepted the payment.

A central point of dispute between the parties is how Icon obtained the Appraisal. CUMIS posits that the Hruzas included the Appraisal with their loan application, thus prompting Icon to pay Capitol for the Appraisal. Massey suggests that Icon improperly obtained the Appraisal, pointing to Icon's admission that it did not know how it obtained it and that Icon did not request a letter of assignment from Clearwater to use or rely on the Appraisal.

The Hruzas promptly defaulted on the Icon loan in November 2007. Subsequently, Icon had the Hruzas' property reappraised. The new appraisal valued the property at $535,000 as of August 2008. A subsequent appraisal concluded that the property was worth $652,000 at the date of the Appraisal in 2007, not $1,150,000 as the Appraisal stated.

CUMIS is the fidelity bond insurer for Icon and paid $247,474.90 to Icon as a result of the Hruzas' default. In April 2011, CUMIS, as Icon's subrogee, filed its complaint against Massey and Capitol alleging professional negligence, negligent misrepresentation, and breach of contract based on Massey's conduct in preparing the Appraisal. CUMIS requested a jury trial. In November, 2011, Massey and CUMIS filed cross-motions for summary judgment. Both motions came before the district court on February 9, 2012.

At the hearing, the district court noted that it had not received the affidavit of Ernie Menchaca, upon which Massey had relied heavily in the brief in support of his motion for summary judgment. Counsel for CUMIS stipulated to the untimely submission of Menchaca's affidavit. This stipulation was based upon counsel's erroneous belief that Massey had previously provided a copy to CUMIS. Massey filed the affidavit later that day and the district court considered it in reaching its decision. The district court concluded that CUMIS could not establish that Massey owed a legal duty to Icon, that Idaho does not recognize a cause of action

---

[1] Idahy Federal Credit Union will hereafter be referred to as "Icon."

2

for negligent misrepresentation against appraisers, and that CUMIS had no breach of contract claim. Therefore, the district court granted Massey's motion for summary judgment and dismissed all claims asserted by CUMIS, with prejudice. CUMIS timely appealed from the judgment.

## II. STANDARD OF REVIEW

"In an appeal from an order granting summary judgment, this Court's standard of review is the same as the standard used by the district court in passing upon a motion for summary judgment." *Partout v. Harper*, 145 Idaho 683, 685, 183 P.3d 771, 773 (2008). "All disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party." *Estate of Becker v. Callahan*, 140 Idaho 522, 525, 96 P.3d 623, 626 (2004). Summary judgment is proper if the "pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c).

The "fact that both parties move for summary judgment does not in and of itself establish that there is no genuine issue of material fact." *Intermountain Forest Mgmt., Inc. v. Louisiana Pac. Corp.*, 136 Idaho 233, 235, 31 P.3d 921, 923 (2001). The moving party bears the burden of proving the absence of material facts but "is entitled to judgment when the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case on which that party will bear the burden of proof at trial." *Partout*, 145 Idaho at 688, 183 P.3d at 776 (quoting *Badell v. Beeks*, 115 Idaho 101, 102, 765 P.2d 126, 127 (1988)). In a case that would otherwise be decided by a jury, the trial court is not free to arrive at the most probable inferences that may be drawn, but is compelled to draw all inferences in favor of the non-moving party. *Mastrangelo v. Sandstrom, Inc.*, 137 Idaho 844, 846, 55 P.3d 298, 300 (2002).

The non-moving party "may not rest upon the mere allegations or denials of that party's pleadings, but that party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." I.R.C.P. 56(e). Summary judgment must be denied "if the evidence is such that conflicting inferences may be drawn therefrom, and if reasonable people might reach different conclusions." *Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 720, 791 P.2d 1285, 1299 (1990).

## III. ANALYSIS

Here, Massey admits that the Appraisal was defective. The issue that was before the district court and is central to this appeal is whether Massey established that there was no issue of material fact as to whether Massey assumed a duty of care to Icon. We conclude that while the district court was correct in its determination that the language of the Appraisal, specifically Certifications 21 and 23, identifies those to whom Massey may have owed a duty of care, the district court erred in finding that Massey satisfied his burden of proving the absence of a genuine issue of material fact. A contract may create the circumstances for the commission of a tort, and in this case the Appraisal specifically authorized its use by other lenders through distribution from the client (Clearwater) or at the request of the borrowers (the Hruzas). While the district court found that there was no evidence that either Clearwater or the Hruzas disclosed the Appraisal to Icon, we find that legitimate inferences which should be drawn from the evidence in favor of CUMIS are sufficient to withstand summary judgment.

Before turning to the merits of the district court's summary judgment decision, we consider two preliminary evidentiary matters challenged by CUMIS on appeal. CUMIS asserts that the district court erred by relying on Menchaca's affidavit and that the district court erroneously interpreted the deposition testimony of Icon's president and CEO, Connie Miller.

**A. The district court did not err in accepting and considering Menchaca's affidavit.**

CUMIS contends that the district court erred in relying on Menchaca's affidavit because it was not in the record. Although this is how CUMIS has characterized this issue, this is not accurate. Menchaca's affidavit was in the record before the district court and is before this Court on appeal. Rather, CUMIS's substantive argument is that Massey had an obligation to timely serve the affidavit, failed to do so, and CUMIS was thereby prejudiced by the inability to respond to it. Massey asserts that CUMIS is bound by its stipulation that the district court could consider the affidavit when deciding the cross-motions for summary judgment. We agree.

This Court reviews a district court's decision to accept an untimely filed affidavit in connection with summary judgment, and a court's decision to relieve a party from a stipulation, for an abuse of discretion. *Sun Valley Potatoes, Inc. v. Rosholt, Robertson & Tucker*, 133 Idaho 1, 5, 981 P.2d 236, 240 (1999). This Court considers: "(1) whether the court correctly perceived the issue as discretionary; (2) whether the court acted within the outer boundaries of its discretion and consistently with applicable legal standards; and (3) whether it reached its

4

decision by an exercise of reason." *Taylor v. AIA Servs. Corp.*, 151 Idaho 552, 559, 261 P.3d 829, 836 (2011).

Idaho Rule of Civil Procedure 56(c) requires the party moving for summary judgment to serve the motion, supporting brief, and supporting affidavits not less than twenty-eight days before the hearing. I.R.C.P. 56(c). "The purpose is to give the opposing party an adequate and fair opportunity to support its case." *Sun Valley Potatoes, Inc.*, 133 Idaho at 5, 981 P.2d at 240. While the above language is mandatory, a district court "may alter or shorten the time periods and requirements of this rule for good cause shown." I.R.C.P. 56(c).

Here, Massey failed to file the Menchaca affidavit with the district court or serve a copy of it upon CUMIS in connection with his motion for summary judgment. This was clearly an oversight, as the affidavit was referenced over a dozen times in Massey's memorandum in support of his request for summary judgment. The affidavit's significance was evident, as the district court asked about the affidavit early in the hearing:

> **The Court:** I did not receive, and there is not in the court file, and it's not in the register of actions either, the affidavit of Ernie Menchaca. So that's something that I'm going to – I'm assuming the plaintiff received that as part of the papers; is that right?
>
> **Mr. Wilson [for CUMIS]:** I believe so, your Honor. And to the extent that counsel wants to ask permission to augment the record to get that filed before the court rules, I've got no problem with that.
>
> . . . .
>
> **The Court:** [A]s long as the plaintiff got it, I didn't see that there would be any prejudice at this point to having the record augmented. And I appreciate that Mr. Wilson is willing to stipulate to that.

"Oral stipulations of the parties in the presence of the court are generally held to be binding." *Baruch v. Clark*, 154 Idaho 732, 737, P.3d 357, 362 (2013). However, it is within the trial court's discretion, for good cause shown and in furtherance of justice, to relieve a party from a stipulation. *Thompson v. Turner*, 98 Idaho 110, 112, 558 P.2d 1071, 1073 (1977). Relief from a stipulation should be sought in a timely manner, and failure to make a seasonable application for relief may preclude the court from granting it. 83 C.J.S. Stipulations § 95 (2013).

After the district court granted Massey's motion for summary judgment, CUMIS filed a motion for reconsideration, but failed to notify the court that it had not previously received the affidavit. It was more than two months after CUMIS's mistaken representation that CUMIS informed the district court of its mistake. Even after acknowledging its mistake, CUMIS did not

5

request relief from its stipulation. Consequently, there is no adverse ruling from which CUMIS may properly appeal. *Izaguirre v. R & L Carriers Shared Servs., LLC*, 155 Idaho 229, ___, 308 P.3d 929, 933 (2013). Because CUMIS did not seek relief from its stipulation that the district court could consider the Menchaca affidavit, there is no basis for this Court to find error in the district court having done so.

**B. The district court properly considered the testimony of Connie Miller as Icon's representative.**

The district court determined that the only evidence CUMIS provided with respect to how Icon obtained the Appraisal was the deposition testimony of Connie Miller, president and CEO of Icon at the time in question. She testified, "I'm not aware that we ever identified how we got the appraisal." CUMIS argues that the district court improperly considered Miller's deposition testimony, arguing that her testimony referred to her personal knowledge and that she was not speaking for Icon.

Miller's deposition was taken as an I.R.C.P. 30(b)(6) deposition of CUMIS Insurance. Idaho Rule of Civil Procedure 30(b)(6) provides that a party may name a corporation as a deponent, and in that event, the organization shall name an officer "to testify on its behalf." This Court considers the testimony given pursuant to I.R.C.P 30(b)(6) to be the testimony of the entity. *See Jacklin Land Co. v. Blue Dog RV, Inc.*, 151 Idaho 242, 248, 254 P.3d 1238, 1244 (2011). Thus, the district court properly considered Miller's testimony to be the testimony of Icon. We turn next to the substantive issues presented by this appeal.

**C. A duty of care may be established by the certifications within the Appraisal.**

The district court determined that by making certain certifications within the Appraisal, Massey assumed a duty of care to parties other than his client, Clearwater. We agree.

In Idaho, a cause of action for negligence requires the plaintiff establish: "(1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage." *Nation v. State, Dep't of Corr.*, 144 Idaho 177, 189, 158 P.3d 953, 965 (2007) (quoting *O'Guin v. Bingham Cnty.*, 142 Idaho 49, 52, 122 P.3d 308, 311 (2005)). "Whether a duty exists is a question of law over which this Court exercises free review." *Id.* at 189, 158 P.3d at 965.

"Every person has a 'duty to exercise ordinary care to prevent unreasonable, foreseeable risks of harm to others.' " *Nation*, 144 Idaho at 190–91, 158 P.3d at 966–67 (quoting *Turpen v.*

*Granieri*, 133 Idaho 244, 247, 985 P.2d 669, 672 (1999)). When a contract is involved, this Court has previously recognized that "a contract may create the circumstances for the commission of a tort." *Baccus v. Ameripride Servs., Inc.*, 145 Idaho 346, 350, 179 P.3d 309, 313 (2008) (quoting *Just's Inc. v. Arrington Const. Co.*, 99 Idaho 462, 468, 583 P.2d 997, 1003 (1978)). In such circumstances, the contract may create a relationship which demands the exercise of proper care. *See Taylor v. Herbold*, 94 Idaho 133, 138, 483 P.2d 664, 669 (1971). Although the breach of a contract does not itself give rise to an action sounding in tort, a legal duty independent from the contract may arise when one voluntarily undertakes to perform an act. *Baccus*, 145 Idaho at 350, 179 P.3d at 313. The resultant duty is the "duty is to perform the voluntarily-undertaken act in a non-negligent manner." *Id.* This duty may be owed to third parties based on the nature of the contractual undertaking when it is foreseeable that others may rely on performance of the contract. *Id.* at 351, 179 P.3d at 314.

Here, the Appraisal listed Clearwater as the intended user and client. The Appraisal states that the intended use of the Appraisal was for the client, Clearwater, to evaluate the property for purposes of a mortgage finance transaction and identifies no other intended users. Significantly, however, beyond the identification of the intended user, the Appraisal contains two certifications, by which Massey "certifies and agrees that":

> 21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower . . . without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party . . . .
> . . . .
> 23. The borrower, another lender at the request of the borrower . . . may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

Thus, Massey "certified and agreed" that Clearwater could distribute the Appraisal to the Hruzas or another lender upon the request of the Hruzas, without Massey's prior consent. Further, Massey certified that the Hruzas and another lender (if so requested by the Hruzas) could rely on the Appraisal.

By the latter certification, Massey assumed a duty of care to those whom he expressly identified as being able to rely on the report, as it was reasonably foreseeable that the certification would lead such parties to rely upon Massey to perform his appraisal in a non-

negligent fashion. Our conclusion does not extend the appraiser's potential liability to society as a whole; rather, this assumed duty extends only to those parties identified in Certification 23.

CUMIS also argues that the Uniform Standards for Professional Appraisal Practice (USPAP) impose a duty of care on Massey's part that extends to Icon. In 1990, the Idaho Legislature created the Real Estate Appraiser Board and granted that body the authority to promulgate rules governing the licensure and regulation of appraisers. *See* I.C. §§ 54-4101 to 54-4119. Since 2002, Idaho has incorporated the current edition of the USPAP into the regulations of the Real Estate Appraiser Board "as the rules of conduct and code of ethics for all Real Estate Appraisers." IDAHO ADMIN. CODE r. 24.18.01.700.

CUMIS argues that by using a Summary Appraisal Report, Massey voluntarily assumed a duty to the borrower and other lenders. Standard 2-2 of the USPAP requires a Self-Contained Appraisal Report or Summary Appraisal Report to be prepared if the intended users include parties other than the client. Unif. Standards of Prof'l Appraisal Practice § 2-2 cmt. at 23 (2006). However, if the client is the sole intended user "a Restricted Use Appraisal Report *may* be used." *Id.* (emphasis added). Under the plain language of Standard 2-2, a Summary Appraisal Report could be prepared with the client as the only intended user; thus, CUMIS's contention that Massey's submission of a Summary Appraisal Report automatically meant Massey intended other users to receive the Appraisal is incorrect. Therefore, while the USPAP may define the standard of care owed by an appraiser, they do not impose an affirmative duty of care on an appraiser in favor of a lender who is not a client or designated intended user of the appraisal.

**D. There remain issues of material fact as to how Icon obtained the Appraisal.**

The district court properly looked to the language of the certifications to determine whether Massey assumed a duty of care to Icon. However, the district court erred in its conclusion that there is no genuine issue of material fact for trial. If Icon obtained the Appraisal by one of the means contemplated by Certification 21, then Massey owed a duty of care to Icon based upon the duty he undertook in Certification 23. Conversely, if Icon obtained the Appraisal by means other than those identified in Certification 21, Massey did not owe ICON a duty. Accordingly, the inquiry as to whether summary judgment was properly granted turns on the evidence relating to the manner by which the Appraisal came into Icon's possession.

The district court relied heavily on three points made in Menchaca's affidavit: (1) the Appraisal was prepared exclusively for Clearwater; (2) that it is not customary to assign an

appraisal to another lender without a letter of assignment; and (3) generally those in the position of Icon would use their own appraiser. The district court determined that summary judgment was appropriate because "there is no evidence in the record to support the conclusion that Clearwater disclosed the [Appraisal] to Hruza or that Hruza requested that Clearwater disclose the Report to [Icon]." The district court was correct that there was no direct evidence as to either manner in which the Appraisal came into Icon's possession. However, in our view, the district court failed to give CUMIS the benefit of all reasonable inferences.

Despite the fact that Icon had no idea as to how it came into possession of a copy of the Appraisal, there are only three avenues that fall into the realm of reason: (1) Massey provided it directly to Icon; (2) Clearwater provided it directly to Icon; or (3) Clearwater or Massey provided it to the Hruzas, who in turn provided it to Icon. Any of these three methods of delivery would trigger the duty Massey assumed in Certification 23.

In our view, there is evidence that is susceptible of the reasonable inference that the Appraisal came into Icon's possession in one of the three fashions identified above. Icon paid Capitol $800 by check and Capitol deposited the check. The check did not contain any notation as the purpose of the payment. The district court's opinion did not specifically address any inferences that might be drawn from the payment. Massey argues that the check is irrelevant because payment alone does not create an appraiser-client relationship nor does it make the payor an intended user of the Appraisal. We agree with Massey that under the USPAP, Icon's payment to Massey does not, standing alone, create an appraiser-client relationship and it does make Icon an intended user. Unif. Standards of Prof'l Appraisal Practice Advisory Op. 26 at 208–09 (2006). However, despite the check not serving to conclusively establish a relationship, this does not render the fact of payment irrelevant. It is undisputed that Clearwater did not pay Massey for his preparation of the Appraisal. Under these circumstances, this $800 payment may reasonably be inferred to be compensation from Icon to Capitol for the Appraisal. What may not be inferred is who requested that such payment be made, i.e. Capitol, Clearwater or the Hruzas.[2]

The district court noted that because there was no formal assignment from Clearwater, there was no evidence that Clearwater or the Hruzas disclosed the Appraisal to Icon. CUMIS argues the district court failed to draw inferences in favor of CUMIS. Massey argues the district

---

[2] We note that Massey's affidavit is silent as to any contact that any agent or employee of Capitol, apart from Massey himself, may have had with Icon or the Hruzas.

court properly relied on Menchaca's affidavit, and that it established Massey owed no duty to Icon because it was not customary for another lender to rely on an appraisal without a new, formal, assignment between the new lender and the appraiser.

We find it significant that Menchaca's affidavit does not state that Clearwater *did not* disclose the Appraisal to Icon or the Hruzas. Rather, it only states it is not the usual custom in the industry for another lender to rely on an appraisal without a formal letter of assignment and that a formal letter was absent in this case. Miller testified that although she did not know for a certainty how Icon obtained the Appraisal, she believed it "likely" that the Appraisal was delivered by the Hruzas. In order to arrive at the conclusion reached by the district court, the district court necessarily disregarded Miller's testimony as to the most probable mechanism of delivery and drew an inference in favor of Massey, i.e., that Clearwater or Capitol did not provide the Hruzas with a copy of the Appraisal, without supporting testimony. In our view, when all reasonable inferences are drawn in CUMIS's favor and the evidence is viewed in the light most favorable to CUMIS, there was sufficient evidence to withstand Massey's motion. For this reason, the judgment dismissing Icon's claim must be vacated.

**E. Massey is not entitled to attorney fees under I.C. § 12-121.**

Massey requests attorney fees on appeal, relying upon I.C. § 12-121. As Massey is not the prevailing party, he is not entitled to an award of attorney fees.

## IV. CONCLUSION

We vacate the judgment of the district court dismissing CUMIS's complaint. We award costs on appeal to CUMIS.

Chief Justice BURDICK, Justices EISMANN, J. JONES and Justice Pro Tem SCHROEDER, **CONCUR**.

10