# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 44133-2016

SETH GRIFFITH,                                              )
                                                           )          Boise, February 2017 Term
    Plaintiff-Appellant,                )
                                                           )          2017 Opinion No. 29
v.                                                         )
                                                           )          Filed: April 10, 2017
JUMPTIME MERIDIAN, LLC, an Idaho                           )
Limited Liability Company,                                 )          Stephen W. Kenyon, Clerk
                                                           )
    Defendant-Respondent.               )
                                                           )

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, in and for Ada County. Hon. Deborah A. Bail, District Judge.

The judgment of the district court is <u>affirmed</u>.

Eric Clark, Clark & Associates, Eagle, argued for appellant.

William Fletcher, Hawley Troxell Ennis & Hawley LLP, Boise, argued for respondent.

_____

EISMANN, Justice.

This is an appeal out of Ada County from a judgment dismissing an action brought against JumpTime Meridian, LLC, by Seth Griffith seeking damages for an injury he received while attempting a triple front flip when he was seventeen years of age. We affirm the judgment of the district court.

## I.
## Factual Background.

On January 11, 2014, seventeen-year-old Seth Griffith ("Plaintiff") was seriously injured when he attempted a triple front flip into a pit filled with foam blocks ("foam pit") at an indoor trampoline park owned and operated by JumpTime Meridian, LLC ("JumpTime"). Plaintiff went to the facility with his girlfriend and her younger brother and sister. Plaintiff initially played with the brother on trampolines for about ten or fifteen minutes, and then they went to an

area where there were runway trampolines. Plaintiff spent about fifteen to twenty minutes doing front flips, back flips, and cartwheels on the runway trampolines, and he taught the brother to do a front flip. He then started showing off to the brother, doing various gymnastic tricks. He jumped up, did a back flip, jumped up, and did another back flip, and a female JumpTime employee, who was monitoring the foam pit area, told him it was pretty cool.

The facility had foam pits, one large (sixteen feet by eighteen feet) and one small (nine feet by sixteen feet). The large foam pit had twin trampolines that were each twelve feet long leading to it, and the small foam pit had a 58-foot-long trampoline runway leading to it.

Plaintiff's girlfriend and her sister were near the large foam pit. He walked over to where they were and talked to them. While he was there, he jumped into the large foam pit a few times. He then spent about 45 minutes "kind of horsing around on both the runway trampoline and the foam pit and the twin trampolines." After he did a double front flip into the small foam pit, the monitor came up to him and asked if he had ever done a double before. He answered that he had, and she said, "Oh, that was pretty sweet." As he continued performing double front flips into the small foam pit, he noticed that doing them was easier than it used to be for him. He decided to try a triple front flip. When he attempted it, he did not rotate far enough and landed on his head and neck, suffering a cervical dislocation and fracture, which required a fusion of his C6 and C7 vertebrae.

Plaintiff filed this action alleging that JumpTime negligently caused his injury. He contended that because he was under the age of eighteen, JumpTime had a duty to supervise him. He had been intentionally landing the double front flips on his back in the pit. He testified that he did so "because you don't want to land on your feet because you can bash your head against your knees." JumpTime's written policy manual instructed its employees with respect to the foam pit to "[f]ollow the rules outlined on the wall and continuously enforce it." There were signs on the walls near the two pits that instructed customers to land on their feet. A large sign painted on the wall next to where the runway trampoline ended at the small foam pit said:

- Jump feet first into the pit
- Land on your feet and seat
- No landing on your head or Stomach

Just past the small foam pit was a sign titled "FOAM PIT RULES," which included the admonition: "WHILE YOU JUMP: DO NOT land on head, neck or belly. NO DIVING; FEET

FIRST." A third sign located on the wall near the large foam pit was titled "FOAM PIT PATRON RESPONSIBILITY CODE," and it included the admonition, "Jump and land on two feet." Plaintiff contended that had the attendant told him to land on his feet, he would not have attempted the triple front flip.

JumpTime moved for summary judgment alleging that there was no negligence, based upon the opinion of an expert that industry standards permitted landing a front flip into a foam pit on one's feet, buttocks, or back, and that there was no evidence of causation. In response, Plaintiff contended that the signs on the wall stating how to land in the foam pit established the standard of care and that because of the attendant's failure to admonish him for landing incorrectly, he was not discouraged from attempting a more difficult maneuver like a triple front flip. The district court granted JumpTime's motion for summary judgment, holding that Plaintiff had failed to produce evidence of negligence and causation. Plaintiff then timely appealed.

**II.**

**Did the District Court Err in Granting JumpTime's Motion for Summary Judgment?**

When reviewing on appeal the granting of a motion for summary judgment, we apply the same standard used by the trial court in ruling on the motion. *Infanger v. City of Salmon*, 137 Idaho 45, 46–47, 44 P.3d 1100, 1101–02 (2002). We construe all disputed facts, and draw all reasonable inferences from the record, in favor of the non-moving party. *Id*. at 47, 44 P.3d at 1102. Summary judgment is appropriate only if the evidence in the record and any admissions show that there is no genuine issue of any material fact regarding the issues raised in the pleadings and that the moving party is entitled to judgment as a matter of law. *Id*.

"The elements of common law negligence have been summarized as (1) a duty, recognized by law, requiring a defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injuries; and (4) actual loss or damage." *Alegria v. Payonk*, 101 Idaho 617, 619, 619 P.2d 135, 137 (1980). In this case, there were no facts in the record showing a causal connection between JumpTime's alleged negligence and Plaintiff's injury.

The issue of causation is why Plaintiff attempted the triple front flip. He did not tell anyone he was going to attempt it, nor is there any evidence indicating that the monitor knew or should have known that he would try a triple front flip. Plaintiff argues on appeal that he is

3

"entitled to the reasonable inference that had JumpTime enforced its rules and interceded when [he] was landing improperly and dangerously on his back, [he] would not have felt emboldened and would never have attempted a triple flip."

First, there is no evidence that it was dangerous to land on one's back. Even Plaintiff testified that he believed it was safer because it avoided the risk of hitting his face with his knees.

Second, Plaintiff did not testify during his deposition that had the monitor admonished him to land on his feet that he would not have attempted the triple front flip, nor did he testify that the conduct of the monitor was part of that decision. He testified that he decided to attempt the triple front flip because completing the double front flips was easier than previously had been for him, that he was having to come out of his rotation earlier than he previously had to, and that he was confident he was in the air long enough to do a triple front flip, which would be exciting.

Plaintiff testified that performing the double front flips was easier than it previously had been for him.

> Q. Well, tell me everything. Let's just move in chronological order about what is happening and work up to the incident. So if you are at that point, then go ahead.
> A. After about 45 minutes of just kind of horsing around on both the runway trampoline and the foam pit and the twin trampolines, I got onto the runway trampoline, plus the foam pit, and I kind of noticed I had been doing doubles easier than what I was normally used to, like I was just either spinning faster or getting higher. It was just easier than what I was accustomed to. So I decided to go for a triple.

He was asked why he attempted the triple front flip, and he did not answer that JumpTime was in any way responsible for that decision. He said that when doing double front flips he had to come out of his rotation earlier than he previously had to and he thought he had enough air to perform a triple front flip.

> Q. Okay. So was the reason that you attempted this triple flip in the small foam pit just because it had a longer runway?
> A. No. I had been doing doubles easier, like I was—I had to break from my rotation earlier than I previously would have to. So it was like I was having more time in the air to actually do the flips. So I kind of thought that I would be able to have enough air to do a triple.

He also stated that he was confident he could perform the triple front flip and was excited to try.

4

Q. Did you have any concerns about being able to do the triple without hurting yourself?

A. No. The time when I was about to do it I was pretty confident that I could.

. . . .

Q. Were you nervous at all before attempting the triple?

A. No. I was actually pretty excited about it.

Q. Why would you say that?

A. Just because, like I used to be an avid gymnastics person, so doing a new trick, like if I could—like if I added a 360 onto a front flip, I'd get pretty excited. If I did like an aerial for the first time, like I got excited. So new things kind of excited me.

Plaintiff's testimony does not support an inference that JumpTime was in any way responsible for his decision to try the triple front flip. Therefore, the district court did not err in granting summary judgment to JumpTime based upon the lack of evidence regarding causation.

### III.

### Is Either Party Entitled to an Award of Attorney Fees on Appeal?

Both parties request an award of attorney fees on appeal pursuant to Idaho Code section 12-121. An award of attorney fees under that statute will be awarded to the prevailing party on appeal only when this Court is left with the abiding belief that the entire appeal was brought, pursued, or defended frivolously, unreasonably, or without foundation. *McGrew v. McGrew*, 139 Idaho 551, 562, 82 P.3d 833, 844 (2003); *Benz v. D.L. Evans Bank*, 152 Idaho 215, 231–32, 268 P.3d 1167, 1183–84 (2012). Because Plaintiff is not the prevailing party on appeal, he is not entitled to an award of attorney fees under that statute. *VanderWal v. Albar, Inc.*, 154 Idaho 816, 824, 303 P.3d 175, 183 (2013). Although it is a close question, we decline to award attorney fees on appeal to JumpTime because we do not find that this appeal meets the requirements for such an award.

### IV.

### Conclusion.

We affirm the judgment of the district court, and we award Respondent costs, but not attorney fees, on appeal.

Chief Justice BURDICK, and Justices JONES, HORTON and BRODY **CONCUR.**

5