# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 46964

<table>
<tr><td>

NICOLE C. PACKER,

   Plaintiff-Appellant,

v.

RIVERBEND COMMUNICATIONS, LLC;
RIVERBEND
COMMUNICATIONS
HOLDING, LLC; and RIVERBEND
COMMUNICATIONS, LLC,
dba RIVERBEND EVENTS,

   Defendants-Respondents,

and

KINGSTON PROPERTIES, L.P.,
and DK ENTERPRISES, INC.,

   Defendants.

</td><td>

Boise, May 2020 Term

Opinion Filed: August 3, 2020

Melanie Gagnepain, Clerk

</td></tr>
</table>

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Bruce L. Pickett, District Judge.

The order of the district court granting summary judgment is <u>reversed</u> and <u>remanded for further proceedings</u>.

Browning Law, Idaho Falls, for appellant Nicole C. Packer. Allen Browning argued.

Hawley Troxell, Pocatello, for respondents Riverbend Communications. John A. Bailey argued.

———————————————

STEGNER, Justice.

This is a premises liability case involving Nicole Packer who was injured when she fell from an unlit loading dock at the Kingston Plaza in Idaho Falls, Idaho. Packer, who was working as a vendor at a Christmas-themed exposition, alleges that she had been directed to use the rear exit by a representative of Riverbend Communications, LLC, the organizer of the exposition and the occupier of the property at the heart of this litigation. The rear exit was unlit, and when Packer

1

left the building, she was unable to re-enter. Because of the lack of light, Packer did not realize she was on a loading dock which was five feet above the adjoining pavement. When she proceeded towards the lit parking lot, she fell to the asphalt and was seriously injured. Packer sued the owner of the property, Kingston Properties, as well as Riverbend Communications, LLC.[1] Following discovery, the defendants sought and were granted summary judgment. Packer unsuccessfully moved for reconsideration. She timely appealed only the district court's decision granting summary judgment in favor of Riverbend. For the reasons set out below, we reverse the district court's decision granting summary judgment and remand for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual background.

On Friday, December 4, 2015, Packer participated as a vendor in a Christmas-themed expo (Expo) in Idaho Falls, Idaho. The Expo was held in Kingston Plaza, a building owned by Kingston Properties, L.P., and DK Enterprises, Inc. The property was leased to Riverbend, a company which organizes and hosts events at which vendors rent space to set up booths to exhibit and sell their products and services.

Packer had previously been a vendor at an event at the Plaza and was familiar with the building. The Plaza has several exits, only three of which are relevant to this case. The main access doors are on the north side of the building, and are available to members of the public. There is a second exit on the west side of the building which is adjacent to the wrap-around parking lot. Finally, there is a rear exit to the south, where the loading dock is situated. According to Packer, she had never used the rear exit before and was not familiar with that side of the building.

On the first day of the Expo, Packer brought and assembled the furnishings for her booth in the morning. She parked in the west parking lot and used the west side of the Plaza to access the building. While she set up, she was approached by Jay Dye, an employee of Riverbend who

---

[1] The original complaint named the following entities as defendants: Riverbend Communications, LLC; Riverbend Communications Holdings, LLC; and Riverbend Communications, LLC, doing business as Riverbend Events. However, the parties stipulated below to dismissal of Riverbend Communications Holdings, LLC, and Riverbend Communications, LLC, doing business as Riverbend Events, leaving only Riverbend Communications, LLC, as a defendant. However, even though a stipulation had been agreed upon, these two parties were not dismissed by the district court until the district court dismissed the entire case with prejudice, which precipitated this appeal. The caption has never been amended to delete the dismissed parties. In this opinion, unless otherwise noted, Riverbend Communications, LLC, will be referred to as "Riverbend."

supervised the vendors at the Expo. Dye told Packer that vendors were not to use the west entrance, but instead should use the rear exit.[2] According to Packer, Dye stated that there was a problem with her using the west door. Packer also stated that Dye directed vendors not to use the main doors to the north, because those doors were exclusively for the Expo's patrons.

By 8:00 p.m., the Expo's patrons had thinned and many vendors had already left for the day. Packer headed outside through the rear exit as instructed by Dye. She had a cup from Jamba Juice in one hand, her purse slung over her shoulder, and some other items in her other hand. Packer pushed open the rear door and stepped outside. The door closed behind her. According to Packer, the door locked when it closed.

The area immediately outside the door was dark and unlit. Packer was apparently disoriented in the darkness, but she could see light from the western parking lot to her right. Packer briefly paused and then began walking toward the parking lot where she had parked. Unbeknownst to her, the rear exit opened onto a loading dock five feet from the pavement. It is unclear from the record whether the lights were off or broken. What is not disputed is that the entire dock was unlit. In the darkness, Packer stepped off the loading dock, fell five feet, and landed on the asphalt. She was initially unable to move, but ultimately found her phone and called her husband, who came and took her to the emergency room. Packer's father later retrieved the items she had been carrying.

According to Packer, she was seriously injured in the fall. These injuries allegedly included bulging discs, knee sprain, and pain in her arms, neck, and back.

### B. Procedural background.

Packer filed suit on December 4, 2017, naming as defendants Kingston Properties, L.P.; DK Enterprises, Inc.; and Riverbend. Packer alleged two dangerous conditions existed on the property: (1) the lack of lighting outside on the loading dock, and (2) the exit door that automatically locked behind her. Packer alleged these dangerous conditions were the fault of Kingston Properties, L.P., and DK Enterprises, Inc., (collectively, Kingston Defendants) as the owners of the premises. Packer also alleged that Dye's instruction that she exclusively use the back door—"an unmarked and dangerous exit"—was also negligent, and could be imputed by virtue of agency law and *respondeat superior* to Riverbend.

---

[2] The district court observed that the parties disputed Dye's reason for giving this direction. However, the district court found that Dye had told Packer to use the rear exit. While a court should refrain from making findings at a summary judgment proceeding, such a "finding" is immaterial to our analysis, because as the non-moving party, Packer was entitled to the inference that she was told by Riverbend's representative to exit through the rear door.

Riverbend and the Kingston Defendants separately filed for summary judgment. Riverbend accompanied its brief in support of summary judgment with several exhibits, including excerpts from Packer's deposition; an unsigned "multi show payment agreement"; photographs of the loading dock and back door; and the Articles of Incorporation and Annual Report Forms for Riverbend Communications, LLC, and Riverbend Communications Holdings, LLC. Riverbend argued that at most Packer was a licensee. As such, she was obligated to put on evidence that Riverbend was "aware of any dangerous condition" and because she had not done so, Riverbend was entitled to summary judgment. Riverbend also argued that Packer's claims were barred by an indemnity clause in the "multi show payment agreement." However, Riverbend did not offer any evidence showing that Packer had in fact signed such an agreement, instead producing only a sample agreement for the Expo.

In response to Riverbend's motion, Packer argued that she was an invitee, not a licensee, and therefore was owed a higher duty than that contended by Riverbend. She also asserted that it was foreseeable that she would have been injured by following Dye's direction. Packer further maintained that Riverbend's arguments about the indemnity agreement in the "multi show payment agreement" were irrelevant without a showing that Packer had signed this agreement. In an affidavit, Packer denied she had received the agreement, the argument being that without a signed agreement, the indemnity provision had no applicability to her.

Riverbend filed a reply brief and a motion to strike Packer's affidavit. In its reply brief, Riverbend contended that, at most, Packer was a licensee on the premises and also that she was precluded from making her claims by the terms of the "multi show payment agreement."

Packer responded to the motion for summary judgment, arguing that Riverbend had failed to attack Packer's alleged status as an invitee, that Riverbend could not show the absence of a genuine issue of material fact, and that Packer could not be held to the terms of an agreement that Riverbend could not prove she had signed.

Following a hearing on the pending motions, the district court entered multiple memorandum decisions. First, the district court denied Riverbend's motion to strike Packer's affidavit. The district court then granted Kingston's motion for summary judgment because Kingston had relinquished control over the premises to Riverbend and because Packer had not shown that Kingston knew or should have known about the alleged dangerous conditions.

4

The district court also granted Riverbend's motion for summary judgment. First, the district court determined that the undisputed facts showed that Packer was a licensee, not an invitee. Because Packer was a licensee, she was required—and had failed—to show that Riverbend was aware or should have been aware of the alleged dangerous conditions. Second, the district court held that even if Packer was an invitee, she had failed to show that Riverbend had actual or constructive notice of the alleged dangerous conditions. In particular, the district court pointed out that Dye "instructed her to use the back door in the morning of December 4th, but it wasn't until eight at night that [Packer] was injured." Based on the district court's analysis, summary judgment was granted in favor of Riverbend.

Packer moved for reconsideration. In addition to arguing that she was an invitee of Riverbend, Packer asserted that, apart from premises liability, Riverbend was liable to her for negligence because Dye instructed vendors to use the rear exit. Packer relied on the Restatement (Second) of Torts § 311 (2019) for this argument.[3]

Riverbend opposed Packer's motion. Riverbend argued that Packer's "negligent misrepresentation" theory of liability was first raised on her motion for reconsideration and should therefore be rejected. Packer's response was that she had pleaded general negligence in her complaint, and was not injecting a new "negligent misrepresentation" theory into her suit.

The district court denied Packer's motion for reconsideration, ruling that Packer had failed to present new facts or law in her motion. The district court held that Packer had not sufficiently pleaded a cause of action for ordinary negligence outside her premises liability claim, stating that "[a]lthough [Packer] asserts that Riverbend was negligent, it does not de facto establish a claim for negligence." The district court further concluded that even if Packer had sufficiently pleaded negligence, Packer could not show that Riverbend owed her a duty independent from premises liability. Finally, the district court determined that section 311 of the Restatement (Second) of Torts was inapplicable in Packer's case.

Packer timely appealed.

## II.    STANDARD OF REVIEW

This Court employs the same standard as the district court when reviewing rulings on summary judgment motions. *La Bella Vita, LLC v. Shuler*, 158 Idaho 799, 804–05, 353 P.3d 420, 425–26 (2015) (citing *Wesco Autobody Supply, Inc. v.*

---

[3] This Restatement section relied upon is titled, "Negligent Misrepresentation Involving Risk of Physical Harm." Restatement (Second) of Torts § 311. Given our ultimate conclusion that Packer was an invitee of Riverbend and afforded a cause of action under that theory, we find it unnecessary to address the applicability of this provision.

*Ernest*, 149 Idaho 881, 890, 243 P.3d 1069, 1078 (2010)). "The court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a).

*Eldridge v. West*, 166 Idaho 303, 308, 458 P.3d 172, 177 (2020).

"The burden of establishing the absence of a genuine issue of material fact rests at all times with the party moving for summary judgment." *Davison v. Debest Plumbing, Inc.*, 163 Idaho 571, 574, 416 P.3d 943, 946 (2018) (quoting *Van v. Portneuf Med. Ctr.*, 147 Idaho 552, 556, 212 P.3d 982, 986 (2009)). "Once the moving party establishes the absence of a genuine issue, the burden shifts to the nonmoving party to show that a genuine issue of material fact on the challenged element of the claim does exist." *Venable v. Internet Auto Rent & Sales, Inc.*, 156 Idaho 574, 581, 329 P.3d 356, 363 (2014) (quoting *Hei v. Holzer*, 139 Idaho 81, 85, 73 P.3d 94, 98 (2003)). When that occurs, "[t]he nonmoving party must come forward with evidence, by affidavit or otherwise, that contradicts the evidence submitted by the moving party in order to survive summary judgment." *Wattenbarger v. A.G. Edwards & Sons, Inc.*, 150 Idaho 308, 317, 246 P.3d 961, 970 (2010) (citation omitted).

"A party may not rely on his pleadings nor merely assert that there are some facts which might or will support his legal theory, but rather he must establish the existence of those facts by deposition, affidavit, or otherwise." *Fischer v. Croston*, 163 Idaho 331, 339, 413 P.3d 731, 739 (2018) (quotation omitted). "A mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment." *McGimpsey v. D&L Ventures, Inc.*, 165 Idaho 205, 210, 443 P.3d 219, 224 (2019) (quotation omitted).

"Questions of law are reviewed *de novo*." *D.A.F. v. Lieteau*, 166 Idaho 124, 126, 456 P.3d 193, 195 (2019) (citing *Berkshire Invs., LLC v. Taylor*, 153 Idaho 73, 80, 278 P.3d 943, 950 (2012)).

### III.   ANALYSIS

**A. The district court erred in granting summary judgment in favor of Riverbend because Packer was an invitee.**

1. <u>The district court erred as a matter of law in determining that Packer was a licensee.</u>

In granting summary judgment, the district court determined that Packer was a licensee on the property leased by Riverbend. The district court first set out the difference between a licensee and an invitee, and then reasoned that there was a "difference between vendors and patrons of

6

businesses for the purposes of designation in premises liability." Because Packer was "at the expo . . . primarily for her own purpose in advertising and selling her own business[,]" the district court concluded that Packer was a licensee, not an invitee, and the fact that Packer provided "minor or tangential benefits" to Riverbend did not elevate her status from licensee to invitee. The district court contrasted Packer's status as vendor with the Expo patrons. As a result, the district court concluded that Riverbend's duty to Packer was only to inform her of dangerous conditions which were known, or should have been known, by Riverbend.

On appeal, Packer contends that the district court erroneously "framed its opinion in terms of guests on the premises[,]" instead of analyzing the relationship between vendors and an event promoter. Packer argues that *Wilson v. Bogert*, 81 Idaho 535, 545, 347 P.2d 341, 347 (1959), identifies the proper distinction between a licensee and an invitee. Packer contends that she was more of an invitee than the Expo patrons themselves, reasoning that the primary revenue source for an event promoter is "vendors purchasing space for their booths to sell their wares." Packer calls this "a well-known business model and practice." Accordingly, Packer argues that she was in fact "conferring a primary benefit upon Riverbend," while the Expo patrons were conferring a mere tangential benefit.

We begin our analysis with a recitation of the elements of a claim of negligence and premises liability.

> A cause of action for common law negligence in Idaho has four elements: "(1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage."

*Brooks v. Wal-Mart Stores, Inc.*, 164 Idaho 22, 27, 423 P.3d 443, 448 (2018) (quoting *Griffith v. JumpTime Meridian, LLC*, 161 Idaho 913, 915, 393 P.3d 573, 575 (2017)). "Generally, '[w]hether a duty exists is a question of law over which this Court exercises free review.'" *Id.* (alteration in original) (quoting *Cumis Ins. Soc'y, Inc. v. Massey*, 155 Idaho 942, 948, 318 P.3d 932, 938 (2014)).

"When a negligence cause of action is based on premises liability, the element of duty depends on the status of the injured person in relation to the landowner, i.e., invitee, licensee (social guest), or trespasser." *Id.* at 28, 423 P.3d at 449 (citing *Shea v. Kevic Corp.*, 156 Idaho 540, 548, 328 P.3d 520, 528 (2014)). "An invitee is one who enters upon the premises of another for a purpose connected with the business conducted on the land, or where it can reasonably be said that the visit may confer a business, commercial, monetary or other tangible benefit to the landowner."

*Ball v. City of Blackfoot*, 152 Idaho 673, 677, 273 P.3d 1266, 1270 (2012) (quoting *Holzheimer v. Johannesen*, 125 Idaho 397, 400, 871 P.2d 814, 817 (1994)).

On the other hand, "[a] licensee is a visitor who goes upon the premises of another with the consent of the landowner in pursuit of the visitor's purpose." *Chapman v. Chapman*, 147 Idaho 756, 762–63, 215 P.3d 476, 482–83 (2009) (quoting *Holzheimer*, 125 Idaho at 400, 871 P.2d at 817). A social guest is a licensee. *Holzheimer*, 125 Idaho at 400, 871 P.2d at 817. "The fact that a guest may be rendering a minor, incidental service to the host does not change the relationship [between them as a landowner and a licensee]." *Ball*, 152 Idaho at 677, 273 P.3d at 1270 (alterations in original) (quoting *Wilson*, 81 Idaho at 545, 347 P.2d at 347).

Under either alternative of establishing Packer's status as an invitee,[4] Packer was Riverbend's invitee. First, the record establishes that Riverbend procured the property from Kingston to then rent space to vendors to exhibit at the Expo. As a vendor, Packer was present on the land "for a purpose connected with the business conducted [by Riverbend] on the land[.]" *Ball*, 152 Idaho at 677, 273 P.3d at 1270. The business of Riverbend was to lease space to vendors to sell their products and services at the Expo. Second, the district court's conclusion that the fee Packer paid to participate in the Expo as a vendor was only a "minor or incidental" benefit to Riverbend is not accurate because Packer paid a fee to Riverbend to have a booth at the Expo. Packer's presence was neither minor nor incidental to Riverbend's business. Further, the district court's use of the language from *Wilson* regarding "minor, incidental service[s]" conferred by a visitor on a property owner is inapposite; unlike the plaintiff in *Wilson*, Packer was not a social guest. Packer was present for a purpose *directly* related to Riverbend's business on the property. She also conferred a sufficient benefit on Riverbend to elevate herself to the status of an invitee. *See Wilson*, 81 Idaho at 545, 347 P.2d at 347.

Accordingly, the district court erred in concluding that Packer was not an invitee and that Riverbend only owed her the duty owed a licensee.

---

[4] The district court below did not identify that there are two separate ways to establish that a visitor is an invitee. *Ball*, 152 Idaho at 677, 273 P.3d at 1270 (italics added) ("An invitee is one who enters upon the premises of another for a purpose connected with the business conducted on the land, *or* where it can reasonably be said that the visit may confer a business, commercial, monetary or other tangible benefit to the landowner."). Instead, the district court focused on language from *Wilson* where we concluded that a social guest—a classic licensee—was not elevated to the status of an invitee by rendering some "minor, incidental service" to the host. *Wilson*, 81 Idaho at 545, 347 P.2d at 347. The district court's failure to recognize Packer's presence as being connected to and conferring a benefit on Riverbend constituted error in two alternative ways.

2. The district court erred in concluding there was no genuine issue of material fact as to whether of Riverbend breached the duty it owed to Packer.

After concluding that Packer was not an invitee, the district court nevertheless proceeded to discuss the scope of the duty owed to Packer assuming, for purposes of argument, that she *was* an invitee. While the district court did not clearly separate its analysis regarding the existence of a duty, its scope, and whether a duty had been breached, it concluded that "[e]ven if [Packer] was [sic] an [i]nvitee, she failed to show that [Riverbend] had actual or constructive notice of the dangerous condition." The district court reasoned that Packer had not shown that Riverbend "knew or should have known about the lights over the loading dock," despite Dye's instruction to use the back door:

> [A]n instruction by Mr. Dye does not de facto create actual or constructive knowledge of a danger. [Packer] does not establish how long the light was off or broken for, did not establish that Mr. Dye, when giving his instruction, knew or should have known about the lights, nor did she establish why the lights were off or broken. Furthermore, [Packer] even asserts in her own affidavit that Mr. Dye instructed her to use the back door in the morning of December 4th, but it wasn't until eight at night that [Packer] was injured. Because [Packer] did not establish or even present any evidence on the cause of the lighting being off or broken, she therefore could not establish that Mr. Dye knew or should have known about the lighting condition. There are simply not enough facts for this [c]ourt to make any reasonable inference as to the actual or constructive notice necessary to establish that Riverbend had a duty to [Packer].

"A landowner's duty to an invitee is to warn of hidden or concealed dangers and to keep the land in a reasonably safe condition." *Peterson v. Romine*, 131 Idaho 537, 540, 960 P.2d 1266, 1269 (1998) (citation omitted). "An invitee must show 'that the owner or occupier knew, or by the exercise of reasonable care should have known, of the existence of the dangerous condition.'" *Johnson v. Wal-Mart Stores, Inc.,* 164 Idaho 53, 57, 423 P.3d 1005, 1009 (2018) (quotation omitted).

The district court also erred in its analysis of the duty owed Packer with respect to the lighting conditions. After concluding that she was a licensee and not an invitee, the district court proceeded in its analysis by assuming for the sake of argument that Packer *was* an invitee. However, its subsequent analysis was incorrect for two reasons. First, while the district court stated it was applying the duty owed an invitee, it failed to correctly apply the duty owed an invitee. The crux of the district court's reasoning was that Packer could not establish that Riverbend had "actual or constructive knowledge" of the lighting conditions. The district court erred as a matter of law

9

by analyzing only Riverbend's knowledge (actual or constructive), and not the affirmative duty owed by an occupier (Riverbend) to an invitee (Packer) to "keep the premises in a reasonably safe condition." *Holzheimer*, 125 Idaho at 400, 871 P.2d at 817; *see also* IDJI 3.11 ("The [owner/occupier] owes a duty to exercise ordinary care in inspection of the premises for the purpose of discovering dangerous conditions."). Further, according to the record on appeal, a genuine issue of material fact remains as to whether Riverbend kept the premises in a reasonably safe condition when there was no proper lighting on the loading dock.

Second, the district court also erred in granting summary judgment against Packer because a genuine issue of material fact remained as to whether Riverbend had constructive knowledge of the dangerous conditions. In its statement of undisputed facts, the district court found that the record established that Dye had instructed Packer to exit through the back door.[5] The district court also found that it was undisputed that when Packer exited, the back dock was unlit. In its later analysis, the court relied on the fact that Dye had given his instruction in the *morning*, but that Packer had not left the Expo until that *evening*. Nevertheless, a jury could conclude that Dye's instruction breached the duty owed to Packer. It is undisputed that Riverbend required that the vendors' exhibits "be open and staffed during all expo hours: Friday December 4, 2015, 10am to 7pm & Saturday December 5, 2015, 10am to 7pm." (Emphasis omitted.) A jury could reasonably conclude that it would be dark after 7:00 p.m. in December when vendors left the Expo, and that Riverbend breached the duty owed to Packer by directing her to exit via an unlit, unsafe loading dock in the dark.

Much has been made by the district court and Riverbend of the fact that Packer did not attempt to explain *why* the back dock was unlit. The district court suggested that Packer should have established whether the light fixture was broken, had burned out, or was turned off. However, the cause of the unlit conditions is relevant to the scope of duty *only* if Packer was a licensee, and is irrelevant given her status as an invitee. Because the district court incorrectly concluded that Packer could not be an invitee, it incorrectly analyzed the duty owed to Packer.

The district court erred in its determination that there was no genuine issue of material fact regarding whether Riverbend breached the duty it owed Packer as a result of the dangerous condition of the unlit dock. Because Packer was an invitee, Riverbend owed her the duty to warn

---

[5] In its brief, Riverbend contends that it "has at all times denied that Jay Dye ever told Packer to use the back door to exit the building."

her of hidden or concealed dangers and to keep the property in reasonably safe condition. On these facts a jury could reasonably conclude that Riverbend breached either or both of the duties it owed to Packer. Accordingly, the district court's decision granting summary judgment is reversed.

**B. Packer is entitled to costs as the prevailing party. Neither party is entitled to attorney fees.**

Packer has not requested attorney fees on appeal. As a result, we need not address the issue. I.A.R. 41(a). Riverbend requests attorney fees under Idaho Code section 12-121 and I.R.C.P. 54(e)(1), arguing that Packer "brought, pursued or defended [her case] frivolously and without foundation." Because Packer has prevailed on appeal, it is not possible to conclude that her appeal was brought "frivolously, unreasonably, or without foundation." The opposite holds true. As a result, Riverbend is not entitled to an award of attorney fees.

As the prevailing party on appeal, Packer is entitled to an award of costs under Idaho Appellate Rule 40.

## IV.  CONCLUSION

For the foregoing reasons, this Court reverses the district court's grant of summary judgment because (1) it erred in determining that Packer was not an invitee; and (2) a genuine issue of material fact exists as to whether Riverbend breached the duty it owed Packer. The case is remanded for further proceedings consistent with this opinion.

Packer, as the prevailing party, is awarded costs under Idaho Appellate Rule 40.

Chief Justice BURDICK, Justices BRODY, BEVAN and MOELLER CONCUR.

11