# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 40563

| | |
|---|---|
| IRINA N. SHEA, | ) |
| | ) |
| Plaintiff-Appellant-Cross Respondent, | ) Coeur d'Alene, April 2014 Term |
| | ) |
| v. | ) 2014 Opinion No. 64 |
| | ) |
| KEVIC CORPORATION, d/b/a LETT'S DOWNTOWN CARWASH, | ) Filed: June 24, 2014 |
| | ) |
| | ) Stephen W. Kenyon, Clerk |
| Defendant-Respondent-Cross Appellant, | ) |
| | ) |
| and | ) |
| | ) |
| DOES I through X, inclusive, | ) |
| Defendants. | ) |
| _____ | ) |

Appeal from the district court of the First Judicial District of the State of Idaho, Kootenai County. Hon. Benjamin R. Simpson, District Judge.

The district court's rulings on respondent's Motions to Strike Affidavits are <u>affirmed</u>. Judgment of dismissal is <u>vacated</u> and case is <u>remanded</u> for further proceedings consistent with this Opinion. Costs on appeal are awarded to appellant.

Madsen Law Offices, P.C., Coeur d'Alene, attorneys for appellant. Henry D. Madsen argued.

Anderson, Julian & Hull, L.L.P., Boise, attorneys for respondent. Chris H. Hansen argued.

_____

W. JONES, Justice

## I. NATURE OF THE CASE

Appellant Irina N. Shea brought a negligence suit against Respondent Kevic Corporation (Kevic), d/b/a Lett's Downtown Car Wash, located in Coeur d'Alene, Idaho. Shea claimed that she was injured when she slipped and fell on ice near the exit of the car wash due to Kevic's negligence in allowing ice to build up near the car wash exit or in failing to warn of the danger of ice buildup. The district court granted Kevic's motion to strike portions of the affidavit of Shea's attorney Henry Madsen and also granted Kevic's motion for summary judgment. Shea appeals

1

these rulings. In addition, Shea appeals the district court's denial of her two motions for reconsideration. Kevic cross-appeals the district court's order denying its motion to strike portions of Shea's affidavit, which Shea had filed in support of her first motion for reconsideration.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On November 14, 2011, Shea filed a complaint and demand for a jury trial against Kevic. Shea alleged that on January 22, 2011, she "sustained certain injuries as a result of a fall on the ice at the premises of" Lett's Downtown Car Wash, "when she exited her vehicle to adjust her mirrors which had been moved during the car wash." Shea asserted that Kevic was negligent in allowing ice to build up at Lett's Downtown Car Wash premises and in failing to warn or protect patrons from the ice. Shea sought over $30,000 in damages.

Kevic moved for summary judgment. Shea responded in opposition to Kevic's motion and submitted an affidavit of her attorney Madsen in support of her opposition. Kevic moved to strike portions of the affidavit and two of its accompanying exhibits. The district court granted Kevic's motion to strike and motion for summary judgment.

Shea moved for reconsideration. In support of her motion, Shea submitted her own affidavit. Kevic moved to strike Shea's affidavit, but the district court denied Kevic's motion. The district court also denied Shea's motion for reconsideration. The district court entered judgment in favor of Kevic.

Shea filed a second motion for reconsideration and Madsen submitted another affidavit in support of the motion. Kevic again moved to strike portions of the affidavit and its accompanying exhibits. The district court granted Kevic's motion. The district court also denied Shea's second motion for reconsideration and granted Kevic's motion for Idaho Rule of Civil Procedure (I.R.C.P.) 11 sanctions.

Shea appeals to this Court, asserting that the district court erred in (1) granting Kevic's motion for summary judgment; (2) granting Kevic's motions to strike; (3) denying Shea's first motion for reconsideration; and (4) denying Shea's second motion for reconsideration. Kevic cross-appeals, raising the issue of whether the district court erred in denying Kevic's motion to strike Shea's affidavit.

## III. ISSUES ON APPEAL

1.      Whether the district court abused its discretion in granting Kevic's two motions to strike portions of Madsen's affidavits and accompanying exhibits.

**2.** Whether the district court erred in granting Kevic's motion for summary judgment.

**3.** Whether the district court abused its discretion in denying Kevic's motion to strike Shea's affidavit.

**4.** Whether the district court erred in denying Shea's two motions for reconsideration.

## IV. STANDARD OF REVIEW

### A. Motions to Strike

"Summary judgment proceedings are decided on the basis of admissible evidence." *Campbell v. Kvamme*, 155 Idaho 692, 696, 316 P.3d 104, 108 (2013). Hence, "[t]he admissibility of evidence contained in affidavits and depositions in support of or in opposition to a motion for summary judgment is a threshold matter before applying the liberal construction and reasonable inferences rule to determine whether the evidence creates a genuine issue of material fact for trial." *Fragnella v. Petrovich*, 153 Idaho 266, 271, 281 P.3d 103, 108 (2012). "This Court applies an abuse of discretion standard when determining whether testimony offered in connection with a motion for summary judgment is admissible." *Gem State Ins. Co. v. Hutchison*, 145 Idaho 10, 15, 175 P.3d 172, 177 (2007). "A trial court does not abuse its discretion if it (1) correctly perceives the issue as discretionary, (2) acts within the bounds of discretion and applies the correct legal standards, and (3) reaches the decision through an exercise of reason." *Fragnella*, 153 Idaho at 271, 281 P.3d at 108 (quoting *O'Connor v. Harger Constr., Inc.*, 145 Idaho 904, 909, 188 P.3d 846, 851 (2008)).

### B. Summary Judgment

"In an appeal from an order granting summary judgment, this Court's standard of review is the same as that used by the trial court in ruling on the motion." *Summers v. Cambridge Joint Sch. Dist. No. 432*, 139 Idaho 953, 955, 88 P.3d 772, 774 (2004). Under I.R.C.P. 56, summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c).

> The party initially bringing the motion has the burden to prove that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. After the moving party meets this burden, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact. This Court will construe the record in the light most favorable to the party opposing the motion, drawing all reasonable inferences in that party's favor. However, the adverse party may not rest upon mere allegations in the pleadings, but must set forth by affidavit specific facts showing there is a genuine issue for trial.

3

*Gagnon v. W. Bldg. Maint., Inc.*, 155 Idaho 112, 114–15, 306 P.3d 197, 199–200 (2013) (quoting *Boise Mode, LLC, v. Donahoe Pace & Partners Ltd.*, 154 Idaho 99, 103–04, 294 P.3d 1111, 1115–16 (2013)). "Circumstantial evidence can create a genuine issue of material fact. . . . However, the non-moving party may not rest on a mere scintilla of evidence." *ParkWest Homes, LLC, v. Barnson*, 154 Idaho 678, 682, 302 P.3d 18, 22 (2013) (internal citation omitted).

## C. Motions to Reconsider

As for motions to reconsider, we recently clarified that the standard of review was "the same standard of review used by the lower court in deciding the motion for reconsideration." Thus, when the district court grants summary judgment and then denies a motion for reconsideration, "this Court must determine whether the evidence presented a genuine issue of material fact to defeat summary judgment." This means the Court reviews the district court's denial of a motion for reconsideration de novo.

*Bremer, LLC, v. E. Greenacres Irrigation Dist.*, 155 Idaho 736, 744, 316 P.3d 652, 660 (2013) (quoting *Fragnella*, 153 Idaho at 276, 281 P.3d at 113).

## V. ANALYSIS

### A. The District Court Did Not Abuse Its Discretion In Granting Kevic's Two Motions To Strike Portions Of Madsen's Affidavits And Accompanying Exhibits.

Kevic moved to strike two separate affidavits submitted by Madsen. The first affidavit was submitted with Shea's opposition to Kevic's motion for summary judgment (Madsen's first affidavit) and the second with Shea's second motion for reconsideration (Madsen's second affidavit). The district court granted both of Kevic's motions to strike portions of these affidavits.

1. <u>The district court properly granted Kevic's motion to strike select portions of Madsen's first affidavit.</u>

Kevic moved to strike two items in Madsen's first affidavit. The first item was part of the deposition testimony of Kevin Lett, the owner of Lett's Downtown Car Wash, regarding a photograph of the car wash exit that Lett was shown during the deposition. Lett testified to the following regarding the photograph, referred to as Plaintiff's Exhibit 8:

Q. (By Mr. Madsen) And with regards [sic] to Plaintiff's -- can I have you take a look at Plaintiff's Exhibit 8? Do you recognize that?

A. Yes.

Q. And is that the exit from the car wash, also?

A. Yes.

Q. And what does Plaintiff's Exhibit -- you don't know when that was taken, do you?

4

A. I do not.

Q. What does Plaintiff's Exhibit 8 depict?

A. A wet exit area.

Q. Does it also depict ice?

MR. HANSEN: Object to the form. Lack of foundation.

THE DEPONENT: I can't -- I couldn't tell if it was ice or water.

Q. (By Mr. Madsen) Does it -- in your opinion looking at the picture, it's not smooth, is it? This surface isn't smooth with regard to the picture, is it?

MR. HANSEN: Object to the form. Lack of foundation. Go ahead.

THE DEPONENT: I can't tell one way or the other.

Q. (By Mr. Madsen) Does the picture have somewhat of an icy look?

MR. HANSEN: Object to the form. Lack of foundation. Calls for speculation. Go ahead.

THE DEPONENT: Uh, yes.

Kevic did not move to strike any other portion of Lett's deposition testimony provided in Exhibit A of Madsen's first affidavit.

The district court properly exercised its discretion in striking Lett's deposition testimony of the car wash photograph. "Authentication or identification of documentary evidence is a condition precedent to its admissibility." *Harris, Inc., v. Foxhollow Constr. & Trucking, Inc.*, 151 Idaho 761, 770, 264 P.3d 400, 409 (2011) (citing Idaho Rule of Evidence (I.R.E.) 901). Pursuant to I.R.E. 901(a), authentication or identification "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." I.R.E. 901(a). "One example of 'authentication or identification conforming with the requirements of this rule' is '[t]estimony of a witness with knowledge that a matter is what it is claimed to be.'" *State v. Joy*, 155 Idaho 1, 15, 304 P.3d 276, 290 (2013) (alteration in original) (quoting I.R.E. 901(b)(1)). "Photographs are generally admissible where the witness who identifies them testifies that they correctly portray relevant scenes or objects." *McKee v. Chase,* 73 Idaho 491, 501, 253 P.2d 787, 792 (1953).

> This Court has held that changes in the conditions portrayed between the time of the event under investigation and the taking of the photograph do not render the photograph inadmissible if the changes can be explained by a witness, and if the changes are not of such a character as to render the photograph deceptive.

5

*Riksem v. Hollister*, 96 Idaho 15, 16, 523 P.2d 1361, 1362 (1974). "Whether there is a proper foundation upon which to admit evidence is a matter within the trial court's discretion." *Harris*, 151 Idaho at 770, 264 P.3d at 409.

Here the district court recognized that the car wash photograph was taken six days after the accident and that no testimony or other evidence showed that the photograph depicted the same conditions at the time of the accident. To the extent that the photograph was to depict the conditions at the time of the accident, the district court properly recognized that the photograph did not portray that relevant scene. The photograph may be admissible to show the general layout of the car wash, but the photograph was not submitted for that purpose. The district court applied the correct legal standards for authentication and identification and reached its decision to exclude this evidence through an exercise of reason.

Further, to the extent that Shea claims that the conditions depicted in the photograph were evidence of an ongoing condition, the district court properly recognized that the photograph still lacked the proper foundation for admissibility. An ongoing condition of ice buildup cannot be evidenced by one example of "a wet exit area" with "somewhat of an icy look" at an unknown date and time, especially in light of the nature of the condition here. During introduction of the photograph, Shea developed no testimony from Kevic that showed that the conditions depicted in the photograph were indicative of an ongoing condition. The photograph is potentially deceptive if offered to prove an ongoing condition without any explanation showing that the conditions in the photograph actually represented the ongoing condition.

The second item Kevic moved to strike was a copy of a letter Madsen received from a senior claims adjuster with EMC Insurance Company, which was submitted as Exhibit C with Madsen's first affidavit. The letter, dated March 10, 2011, states in relevant part:

Dear Mr. Madsen:

I have completed my investigation of Irina Shea's slip and fall at Lett's Downtown Car Wash. I interviewed our insured, had an independent adjuster take photographs of the premise and diagram the area. You refused to allow me to interview Ms. Shea.

The car wash has an attendant at the beginning to collect the money and prep the car for the wash. The car then travels a conveyor to the exit. Ms. Shea drove just out of the car wash by the exit, stopped, and got out to unfold her door mirrors. Water from the wash had created ice just outside of the exit. Ms. Shea stepped on the ice, slipped and fell injuring herself.

Our obligation is to pay claims which our insured has been shown to be negligent and, therefore, legally responsible. My investigation does not reveal any legal obligation Lett's Downtown Car Wash would have for Ms. Shea's bodily injury. There was ample parking off to the side of the building and she had been there on other occasions so was [sic] aware of the conditions in and around the car wash.

We do have Medical Payments Coverage available for her medical treatment . . . .

The district court properly exercised its discretion by striking the letter from EMC Insurance Company. A senior claims adjuster with EMC Insurance Company interviewed Kevic and reviewed photographs by an independent insurance adjuster to reach the conclusion that "water from the wash had created ice just outside of the exit," which caused Shea to fall. Shea introduced the senior claims adjuster's statement in the letter to prove the truth of the matter asserted—"there was ice on the ground at the exit of the car wash." As hearsay, this statement is admissible only if it falls under a hearsay exception. I.R.E. 802. Shea claims that the statement falls under the business records exception pursuant to I.R.E. 803(6). This exception allows the trial court to admit

[a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

I.R.E. 803(6). "The general requirements for the admission of business records are that the documents be 'produced in the ordinary course of business, at or near the time of occurrence and not in anticipation of trial.'" *Hurtado v. Land O'Lakes, Inc.*, 147 Idaho 813, 815, 215 P.3d 533, 535 (2009) (quoting *Beco Corp. v. Roberts & Sons Constr. Co.*, 114 Idaho 704, 711, 760 P.2d 1120, 1127 (1988)).

The records or reports sought to be admitted into evidence under the business records exception to the hearsay rule need not be authenticated by the person who made the records, but it is necessary that the records be authenticated by a person who has custody of the record as a regular part of his or her work or who has supervision of its creation.

*Henderson v. Smith*, 128 Idaho 444, 450, 915 P.2d 6, 12 (1996). Shea presented no evidence to qualify this letter for the business records exception. There is no testimony that the letter was

7

produced in the ordinary course of business and not in anticipation of trial. The letter was not authenticated by any person who made the letter, had custody of the letter, or supervised its creation. Shea cannot invoke the business records exception to obtain admission of this letter into evidence. Also, the statement must be made "by, or from information transmitted by, a person with knowledge." I.R.E. 803(6). There was no showing that the senior claims adjuster or the individuals interviewed by the adjuster had knowledge. The district court correctly recognized that Shea provided no foundation for the business records exception to the hearsay rule, and therefore the letter was inadmissible.

    2.    <u>Shea waived her appeal of whether the district court erred in striking portions of Madsen's second affidavit.</u>

Shea claimed in her notice of appeal that she intended to appeal the district court's decision to strike portions of Madsen's second affidavit, which was filed in support of Shea's second motion for reconsideration. In this affidavit, Madsen stated in paragraph three that he attached the complete deposition of Lett, not only select portions as submitted in his first affidavit. Kevic moved to strike all discussion in Lett's deposition of eight different photographs that Shea had shown Lett during the deposition, claiming that there was no foundation to admit these photographs and Lett's corresponding testimony. The district court granted Kevic's motion to strike.

Shea offers no argument or authority in her appellate brief on the issue of the district court's order to strike portions of Madsen's second affidavit. Shea has waived her appeal of this issue. Idaho Appellate Rule (I.A.R.) 35(a)(6); *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010). We decline to address it and affirm the district court's decision.

**B.    The District Court Erred In Granting Summary Judgment To Kevic Because Shea Has Shown Genuine Issues Of Material Fact.**

The elements of a negligence claim are: "(1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage." *Cumis Ins. Soc'y, Inc., v. Massey*, 155 Idaho 942, 947–48, 318 P.3d 932, 937–38 (2014) (quoting *Nation v. State of Idaho, Dep't of Corr.*, 144 Idaho 177, 189, 158 P.3d 953, 965 (2007)).

"The duty of a landowner to the person injured on the land turns on the status of the injured person." *Peterson v. Romine*, 131 Idaho 537, 540, 960 P.2d 1266, 1269 (1998) (citing

*Holzheimer v. Johannesen*, 125 Idaho 397, 399, 871 P.2d 814, 816 (1994)). Kevic concedes that Shea had the status of an invitee[1] on the car wash premises. As an invitee, the landowner owes a duty to the invitee "to warn of hidden or concealed dangers and to keep the land in a reasonably safe condition." *Peterson*, 131 Idaho at 540, 960 P.2d at 1269.

To establish a prima facie negligence case, the invitee also must show that the landowner knew, or in the exercise of reasonable care should have known, of the alleged dangerous condition.

> The law is well settled in this state that, to hold an owner or possessor of land liable for injuries to an invitee caused by a dangerous condition existing on the land, it must be shown that the owner or occupier knew, or by the exercise of reasonable care should have known, of the existence of the dangerous condition.

*All v. Smith's Mgmt. Corp.*, 109 Idaho 479, 481, 708 P.2d 884, 886 (1985) (quoting *Tommerup v. Albertsons's, Inc.*, 101 Idaho 1, 3, 607 P.2d 1055, 1057 (1980)). For a nonrecurring or isolated incident, the invitee must show actual or constructive notice of the specific condition. *Id.* (citing *McDonald v. Safeway Stores, Inc.*, 109 Idaho 305, 308, 707 P.2d 416, 419 (1985); *Tommerup*, 101 Idaho at 3–4, 607 P.2d at 1057–58). For a recurring or continuing condition, the invitee must show "that the operating methods of the landowner or possessor are such that dangerous conditions are continuous or easily foreseeable." *Id.* (citing *Tommerup*, 101 Idaho at 3–4, 607 P.2d at 1057–58).

Even with a recurring or continuing condition, the invitee must show that the landowner had actual or constructive knowledge of the dangerous condition. For example, the plaintiff in *All* alleged that she was injured by falling into a pothole in the defendants' parking lot, but the plaintiff was unable to identify which specific pothole of many caused her injury. *Id.* at 480, 708 P.2d at 885. The Court determined that the district court improperly granted the defendants' motion for a directed verdict. *Id.* at 482, 708 P.2d at 887. The Court reasoned that the formation of potholes was not an isolated incident and therefore the plaintiff did not have to show the defendants had actual or constructive knowledge of the specific pothole. *Id.* "It was enough to show that [the defendants] were aware of the continuous formation of potholes in the parking lot through the winter and spring" of the year of the plaintiff's injury. *Id.*

---

[1] "An invitee is one who enters upon the premises of another for a purpose connected with the business conducted on the land, or where it can reasonably be said that the visit may confer a business, commercial, monetary or other tangible benefit to the landowner." *Holzheimer*, 125 Idaho at 400, 871 P.2d at 817.

9

In summary, the invitee must show actual or constructive knowledge on behalf of the landowner to establish a prima facie negligence claim regardless of the nature of the condition. The distinction between an isolated and continuing condition does not eliminate the invitee's burden to establish the landowner's knowledge. In some cases it may be easier for the invitee to show knowledge when the alleged condition is recurring or continuous, but an allegation of a continuous condition does not extinguish the invitee's burden simply because the dangerous condition is regularly occurring. The invitee still must show that the landowner knew or should have known his operating methods caused or were likely to cause a dangerous condition.

In this case, Shea alleged in her complaint that Kevic "allowed ice to build up at the premises of Lett's Car Wash" and that Kevic did not use any "warning signs, barriers, sanding or melting devices . . . to warn or protect business patrons from the hazardous conditions." By "allowing the condition to exist and failing to warn or protect patrons," Shea claimed that Kevic was negligent. Shea also alleged that Kevic owed her a duty "to protect her from such a fall by removing the ice from the premises or creating a barrier or warning to patrons about the icy conditions." According to Shea, Kevic "breached such duty by allowing the hazardous condition, failing to warn [Shea] of its existence, and failing to create a barrier to keep [Shea] from falling on the ice." Based on the evidence in the record, the Court holds that the district court erred in concluding that there were no genuine issues of material fact and granting summary judgment to Kevic.

Construing the record in the light most favorable to Shea and drawing all reasonable inferences in Shea's favor, the evidence creates a genuine issue of material fact as to Kevic's knowledge of the alleged dangerous condition. Shea testified in her deposition:

Q. And when you were walking -- when you got out of your car, when you first put your feet on the ground as you got out of the driver's seat, do you recall whether the ground was wet?

A. It was not wet.

Q. Was it dry?

A. It was dry. Everything was just amazingly dry just like right now.

Q. Okay, and when you walked around by the headlight --

A. Yeah. When I was just making around first move, and apparently there was water trickling down from underneath my car -- from my car wash.

Q. Was it water or was it ice or what was it?

10

A. I don't know because when -- I fell right away, and apparently it was slippery, so it was maybe water and ice all together.

Shea also testified that, as she was "getting out of the car and putting the tip money and as [she] started to walk around," she did not see any snow or ice on the ground. Shea explained, "There was just nice weather, and everything was so dry. Nothing would suggest that it could be that." Shea stated that she did not see what she slipped on. She also stated that she did not notice any ice around her car before or after she fell. After her fall, she explained, "It was so dry and nice." Shea also testified:

Q. Your Complaint alleges that my client allowed ice to build up at the premises. What is the basis of that claim?

A. Well, can I ask Henry [Madsen] how --

Q. Let me ask it this way. Do you recall any build-up of ice at the time of the accident, at the time of the incident?

A. I -- I didn't see it. I'll, um -- if I can add to it, unsure about physical process could be in this kind of weather conditions going on with the water on the surface. That would -- for afterwards I thought it could be water and ice which wasn't really looking like ice. It could be all like together water and ice.

Q. As I understood your testimony earlier, as near as you could tell where you walked was dry. Is that true?

A. It was. Where I -- I mean the spot where I fell.

In Lett's deposition, he stated that every car that comes out of the car wash "is dripping a little water" and he agreed that "when it's cold . . . the water that vehicles . . . track from the car wash . . . freezes." Lett also testified that "[t]he employees are instructed to spread de-icer on the icy areas as needed." Lett discussed his actions and observations immediately following Shea's accident. Lett was working at the car wash the day of the accident, and he explained that an individual notified him that someone had fallen and broken their wrist in the car wash parking lot. Lett went over to the car wash exit and assisted the injured person, Shea, in getting out of the vehicle and obtaining medical treatment. During this discussion of the events following Shea's accident, Lett was asked, "And at the exit of the car wash that day what were the conditions like?" He responded, "It was cold and icy." Shea provided in her response in opposition to Kevic's motion to strike portions of Madsen's first affidavit that the temperature on the day of her alleged accident ranged from 28.9 degrees Fahrenheit to 38.9 degrees Fahrenheit.

The Court initially notes that Shea's deposition testimony that there was "maybe ice and water all together" on the ground at the front of her vehicle does not establish Kevic's actual

knowledge of the specific dangerous condition of ice buildup in front of Shea's car at the time of the accident. *See Giles v. Montgomery Ward Co.*, 94 Idaho 484, 485, 491 P.2d 1256, 1257 (1971) (plaintiff's claim of negligence based solely on his allegation that there was something slippery which caused him to fall did not establish that the defendant knew of the condition, or that the condition was of such a nature that the defendant, in exercising reasonable care for the safety of its customers, should have been aware). Nonetheless, there is more than a mere scintilla of evidence showing that Kevic had actual or constructive knowledge of the operating methods that would cause the dangerous condition of ice buildup.

The evidence, construed in Shea's favor, shows that: (1) vehicles drip water after exiting the car wash; (2) the water that vehicles track from the car wash exit freezes when it is sufficiently cold; (3) Lett observed after being notified of Shea's injury that the conditions at the exit of the car wash on the day of Shea's injury were cold and icy; and (4) the employees are instructed to sprinkle de-icer if there is ice. It is reasonable to infer from this evidence that ice exists outside the car wash exit on certain cold days. It is also reasonable to infer that Kevic knew or should have known of the ice based on Lett's instruction to employees to de-ice the premises when necessary and Lett's general acknowledgment of ice on cold days. Additionally, the temperature the day of Shea's injury was below freezing at some point, but it is not known what the temperature was at the time and location where Shea fell. Although Shea has not shown that Kevic had actual knowledge of the specific ice buildup in front of Shea's car, and that it had existed for a sufficient time to allow warning or correction, this Court concludes that Shea has offered more than a scintilla of evidence to prove that Kevic had actual or constructive notice of operating methods that could cause a dangerous condition of ice buildup when and where Shea fell.

With reasonable inferences construed in Shea's favor, this case possesses some similarities with *McDonald*, 109 Idaho 305, 707 P.2d 416. In that case, the plaintiff presented evidence that she slipped on a cream-colored substance appearing to be melted ice cream at the defendant's grocery store and also that the defendant had an ice cream demonstration at the store that day. *Id.* at 306, 707 P.2d at 417. The Court concluded that "the record before the trial court permitted the reasonable inference that [the defendant] Safeway knew or should have known of the dangerous condition, that it had sufficient time to remedy the situation and that in the exercise of reasonable care, its employees should have cleaned the spill. *Id.* at 307–08, 707 P.2d

at 418–19. The Court reasoned that an ice cream demonstration created a reasonable probability that ice cream would fall on the floor, melt, and cause individuals to slip. *Id.* at 308, 707 P.2d at 419 (discussing *Jasko v. F.W. Woolworth Co.*, 494 P.2d 839 (Colo. 1972)). Thus, the defendants were on notice of that dangerous condition without having knowledge of the specific ice cream spill injuring the plaintiff. Like *McDonald*, it is reasonable to infer that by allowing vehicles to track water out of the car wash exit Kevic knew or should have known of a reasonable probability that the water would freeze on some cold days and cause individuals to slip.

Likewise, Shea's cause of action is similar to the plaintiff's pothole injury in *All*, 109 Idaho 479, 708 P.2d 884. If Shea is able to establish that Kevic had knowledge that ice generally forms at the car wash exit on cold days, she does not need to prove that Kevic had knowledge of the specific ice buildup that caused her fall. *See id.* at 482, 708 P.2d at 887. It was enough for her to show at this stage in the proceedings that Kevic had knowledge of the "continuous formation" of ice buildup at the car wash exit at certain times during the winter months. *See id.*

In summary, the district court erred in concluding that Shea had not met her burden to satisfy the knowledge requirement in her negligence action. Reasonable inferences in her favor show that Kevic had knowledge of operating methods that could create ice buildup at the car wash exit on cold days. Summary judgment to Kevic was in error due to the genuine issues of material fact.

## C. The District Court Did Not Abuse Its Discretion In Denying Kevic's Motion To Strike Shea's Affidavit.

After the district court granted summary judgment to Kevic, Shea moved for reconsideration and submitted an affidavit in support of her motion. In this affidavit, Shea stated that there "was definitely ice on the ground" in front of her car and that she slipped on it. She explained that she stated in her deposition that it was "maybe water and ice all together" because she was unsure whether it was a combination of water and ice or just ice. Kevic moved to strike the affidavit. The district court denied Kevic's motion on the ground that Shea's deposition testimony was "vague as to what she stated as to the cause for her fall." Kevic argues on cross-appeal that the district court abused its discretion in denying its motion to strike.

This Court finds that the district court acted within its discretion. "A motion for reconsideration of any interlocutory orders of the trial court may be made at any time before the entry of final judgment but not later than fourteen (14) days after the entry of the final judgment." I.R.C.P. 11(a)(2)(B). Shea submitted her motion for reconsideration and supporting

13

affidavit within this timeframe. "On a motion for reconsideration, the court must consider any new admissible evidence or authority bearing on the correctness of an interlocutory order." *Fragnella v. Petrovich*, 153 Idaho 266, 276, 281 P.3d 103, 113 (2012). Kevic contends that Shea's affidavit is a sham affidavit that directly contradicts her deposition testimony. "This Court has never adopted the sham affidavit doctrine." *Major v. Sec. Equip. Corp.*, 155 Idaho 199, 206, 307 P.3d 1225, 1232 (2012). Hence, Kevic's contention is without merit. Further, the district court's conclusion that Shea's deposition was vague was reasonable. Shea testified that the ground was dry in the spot where she fell, but also that the ground was maybe water and ice all together and apparently slippery. It was not an abuse of discretion for the district court to conclude that Shea's affidavit might clarify the existing evidence in the record. Shea's deposition testimony and her affidavit filed in support of her motion for reconsideration are inconsistent and contradictory concerning the conditions on the ground where Shea fell, but those inconsistencies and contradictions are matters for cross-examination. It is the role of the jury to determine which of Shea's observations concerning the conditions where she fell are credible.

D.  **This Court Will Not Address The Merits Of Shea's Two Motions For Reconsideration.**

Shea also appeals the district court's denial of her two motions for reconsideration. We find that the district court erred in denying Shea's motions for reconsideration in the sense that the district court declined to reconsider and vacate its erroneous decision. It is not necessary for this Court to further review the district court's decisions on Shea's motions to reconsider. This Court vacates the district court's judgment based on the district court's original error in granting Kevic summary judgment.

E.  **The Court Does Not Award Attorney's Fees On Appeal.**

Both parties seek attorney's fees on appeal pursuant to I.C. § 12-121. This statute "provides for the award of reasonable attorney fees to the prevailing party." *Chisholm v. Twin Falls Ctny.*, 139 Idaho 131, 136, 75 P.3d 185, 190 (2003). "An award of attorney fees under Idaho Code § 12-121 is not a matter of right to the prevailing party, but is appropriate only when the court, in its discretion, is left with the abiding belief that the case was brought, pursued, or defended frivolously, unreasonably, or without foundation." *Michalk v. Michalk*, 148 Idaho 224, 235, 220 P.3d 580, 591 (2009). There is no indication that this appeal was brought, pursued, or defended frivolously, unreasonably, or without foundation. Therefore, neither party is awarded attorney's fees on appeal.

## VI. CONCLUSION

The district court's rulings on Kevic's motions to strike Madsen's affidavits and Shea's affidavit are affirmed. The judgment of dismissal is vacated and the case is remanded for further proceedings consistent with this Opinion. The Court does not award attorney's fees on appeal, but awards Shea costs on appeal.

Chief Justice BURDICK, Justices EISMANN, J. JONES and HORTON, CONCUR.