## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 44634

DIANE BROOKS,

    Plaintiff-Appellant,

v.

WAL-MART STORES, INC., a foreign
corporation doing business in Idaho,

    Defendant-Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, November 2017 Term

2018 Opinion No. 36

Filed: April 19, 2018

Karel A. Lehrman, Clerk

Appeal from the District Court of the Fourth Judicial District of
the State of Idaho, Ada County.  Hon. Lynn Norton, District Judge.

The judgment of the district court is <u>vacated</u> and this case is
<u>remanded</u> for further proceedings consistent with this Opinion.

Comstock & Bush, Boise, for Appellant. John A. Bush argued.

Moffat, Thomas, Barrett, Rock & Fields, Boise, for Respondent.
Mindy M. Muller argued.

_____

BEVAN, Justice.

This is an appeal from a grant of summary judgment dismissing an action originally brought by Diane Brooks ("Brooks") against Wal-Mart Stores, Inc., ("Wal-Mart") based on injuries Brooks received when she slipped and fell on a puddle of water near a Rug Doctor self-service kiosk (the "kiosk") inside the Wal-Mart on Overland Road in Boise, Idaho. Brooks bases her claims on premises liability and negligent mode of operation, alleging Wal-Mart knew or should have known that water could spill or leak onto the floor near the kiosk. Wal-Mart moved for summary judgment, arguing that Brooks failed to establish Wal-Mart had actual or constructive notice of the condition that caused her injury. This is because there was no evidence showing where the liquid came from, how long it had been on the floor, or what it was. The district court agreed. Because we find material issues of fact exist, we reverse the district court.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. The rental process at Wal-Mart.

In August 2011, Wal-Mart and Rug Doctor entered into a Vendor Agreement which allowed Rug Doctor to place its carpet cleaning machines into Wal-Mart stores and offer them for rent to Wal-Mart customers. Through the Vendor Agreement, Wal-Mart directs that the machines be offered to customers through an automated self-serve rental process which required no involvement from Wal-Mart's employees. Thus, the process was self-serve and unsupervised. No Wal-Mart employee had a responsibility to interact with either Rug Doctor's account manager, Spencer Hinkle ("Hinkle"), or customers renting or returning Rug Doctor machines at the kiosk.

The machines are serviced approximately every two weeks by Hinkle. Hinkle testified that he serviced sixty-eight total accounts in the Treasure Valley, nine of which were Wal-Mart stores. The self-service mode of operation was utilized only at Wal-Mart; in all other locations a store employee was involved in the rent-and-return process.

Rug Doctor split the rental and cleaning product fees with Wal-Mart. In the typical arrangement with other stores, Hinkle would provide training to store employees who were involved in the rental and return process. Hinkle testified that he provided no training to the Overland Wal-Mart personnel, nor was he ever asked by anyone at that location to provide training. Thus, no employee was responsible to inspect the Rug Doctor machines to determine if they were clean or dirty upon return; no Wal-Mart employee was responsible to determine if a Rug Doctor machine still had liquid in it when rented, or returned; and no Wal-Mart employee was responsible to inspect the Rug Doctor machines to determine if they leaked.

## B. Wal-Mart's slip-and-fall policy.

Wal-Mart adopted a slip-and-fall policy, entitled "Slip, Trip and Fall Guidelines" which was in place at the time Brooks fell. This policy required employees to keep an eye out for safety-type issues in areas they worked. Specifically, Wal-Mart's maintenance associates were tasked with the specific responsibility of performing "safety sweeps" of high traffic areas and cleaning up spills throughout the day. All other Wal-Mart associates were tasked with performing visual "safety-sweeps" as they performed their regular job duties in the areas they were assigned. Thus, Wal-Mart operated on a clean-as-you-go method with employees directed to observe and remove spills or other safety issues.

**C. The accident.**

On July 24, 2013, Brooks went to Wal-Mart on Overland Road in Boise, Idaho to buy bags of wood chips for her yard. Brooks entered the store through the main doors on the east end of the store and asked a cashier for assistance. A cashier directed Brooks to Customer Service. Brooks proceed down the action alley—a high traffic area/aisle which runs perpendicular to the cash registers and connects the store's front two entrances—to Customer Service. A Wal-Mart employee then escorted Brooks back through the action aisle towards the garden center. While walking down the action alley, Brooks' left foot started to slide, she slipped, and ultimately fell in the area of the self-serve Rug Doctor and Primo Water kiosks. As a result of her fall, Brooks suffered an injury to her left knee that required surgery.

Prior to her fall, Brooks did not see any liquid on the floor. After her fall, Brooks saw the liquid and was lying in it while Wal-Mart employees were assisting her. Neither Brooks nor Wal-Mart employees could find the direct source of the liquid; however, in a subsequent investigation, Wal-Mart documented that Brooks slipped on a puddle of water that had apparently originated from the Rug Doctor kiosk.

Brooks' fall was captured on video. The surveillance video shows that approximately seven minutes before Brooks' fall, a Wal-Mart customer had rented a Rug Doctor machine and lifted it into a shopping cart. The video does not show liquid coming directly from the machine; however, that can be related to the quality of the video and glare on the flooring. The video does show the customer and another person tilting the machine back-and-forth while lifting it into a shopping cart. Brooks' fall was in nearly the precise location where the customer was tilting and moving the machine into the shopping cart.

The video also shows that a Wal-Mart employee and several customers travelled within the same area or path that Brooks travelled within the seven minutes after the Rug Doctor machine was rented before Brooks' fall. During this interval no customers reported any spills and no employees noticed the hazard.

**D. Procedural Background.**

Brooks filed a complaint on November 19, 2014 alleging claims of negligence against Wal-Mart for failure to maintain the premises and to adequately warn Brooks of the dangerous condition. In an amended complaint filed on July 7, 2015, Brooks included a claim of negligent mode of operation against Wal-Mart, Rug Doctor, Inc., and Rug Doctor, LLC.

3

On March 2, 2016, Wal-Mart filed a motion for summary judgment seeking dismissal of Brooks' claims, arguing her allegations were based on speculation rather than objective evidence. Rug Doctor filed a similar motion on the same date. On April 11, 2016, the district court granted summary judgment in favor of Wal-Mart, but denied the same relief to Rug Doctor. The court determined that Rug Doctor machines could leak or spill liquid onto the floor of the Wal-Mart store which would create a potentially dangerous condition, finding issues of fact remained as to whether it was foreseeable that a Rug Doctor machine could cause an injury, and whether Rug Doctor exercised its duty to use reasonable care to avoid Brooks' injury. The court also found that there were triable issues of fact as to whether it was reasonably foreseeable to Rug Doctor that the machine would or could leak or spill liquid during the self-serve rental process. The court, however, refused to apply these findings to Wal-Mart.

The court found Brooks failed to offer evidence that established Wal-Mart had actual or constructive notice of the dangerous condition and that the liquid on the floor near the kiosk was not a continuous or foreseeable condition. Brooks timely filed a motion for reconsideration on April 25, 2016, arguing that because the district court found reasonable minds could differ whether or not Rug Doctor's self-serve rental process could create a hazardous condition in her claim against Rug Doctor, then Wal-Mart, too, should be held liable for choosing the operating method and introducing the potentially hazardous rental process into its store. In its order denying reconsideration, the district court determined (1) that Brooks failed to present evidence that Wal-Mart was a direct and immediate cause of Brooks' injury; (2) that Wal-Mart did not breach the general duty of care; and (3) that Wal-Mart's decision to use the self-service model is not what caused the liquid to be on the floor. The district court dismissed Brooks' claims against Wal-Mart with prejudice on October 17, 2016. Brooks timely filed her notice of appeal.

## II. STANDARD OF REVIEW

### A. Summary Judgment

In a motion for summary judgment, the moving party bears the burden of proving the absence of a material fact. *Sadid v. Idaho State University*, 151 Idaho 932, 938, 265 P.3d 1144, 1150 (2011). "When considering whether the evidence in the record shows that there is no genuine issue of material fact, the trial court must liberally construe the facts, and draw all reasonable inferences in favor of the nonmoving party." *Liberty Bankers Life Ins. Co. v. Witherspoon, Kelley, Davenport & Toole, P.S.*, 159 Idaho 679, 685, 365 P.3d 1033, 1040 (2016).

4

If the moving party has satisfied its burden, the non-moving party must then come forward with sufficient admissible evidence identifying specific facts that demonstrate the existence of a genuine issue for trial. *Wattenbarger v. A.G. Edwards & Sons, Inc.*, 150 Idaho 308, 317, 246 P.3d 961, 970 (2010). Such evidence may consist of affidavits or depositions, as well as other material based upon personal knowledge which would have been admissible at trial. *Sherer v. Pocatello School District No. 25*, 143 Idaho 486, 489, 148 P.3d 1232, 1236 (2006). "Circumstantial evidence can create a genuine issue of material fact . . . [and] [i]nferences that can reasonably be made from the record are made in favor of the non-moving party." *ParkWest Homes, LLC v. Barnson*, 154 Idaho 678, 682, 302 P.3d 18, 22 (2013) (citation omitted).

"If the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercises free review." *Lockheed Martin Corp. v. Idaho State Tax Comm.*, 142 Idaho 790, 793, 134 P.3d 641, 644 (2006) (citation omitted).

B. **Motions to Reconsider**

"[W]hen the district court grants summary judgment and then denies a motion for reconsideration, this Court must determine whether the evidence presented a genuine issue of material fact to defeat summary judgment. This means the Court reviews the district court's denial of a motion for reconsideration de novo." *Shea v. Kevic Corp.*, 156 Idaho 540, 545, 328 P.3d 520, 525 (2014) (internal quotations and citation omitted).

### III. ANALYSIS

A.   **Introduction.**

A cause of action for common law negligence in Idaho has four elements: "(1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage." *Griffith v. JumpTime Meridian, LLC*, 161 Idaho 913, 915, 393 P.3d 573, 575 (2017) (internal quotations and citation omitted). In general, "[e]very person has a general duty to use due or ordinary care not to injure others, to avoid injury to others by any agency set in operation by him, and to do his work, render services or use his property as to avoid such injury." *Stephens v. Stearns*, 106 Idaho 249, 256, 678 P2.d 41, 48 (1984) (internal quotations and citations omitted). Generally, "[w]hether a duty exists is a question of law." *Cumis Ins. Soc'y, Inc. v. Massey*, 155 Idaho 942, 948, 318, P.3d 932, 938 (2014).

5

When a negligence cause of action is based on premises liability, the element of duty depends on the status of the injured person in relation to the landowner, i.e., invitee, licensee (social guest), or trespasser. *Shea*, 156 Idaho at 548, 328 P.3d at 528 (citing *Peterson v. Romine*, 131 Idaho 537, 540, 960 P.2d 1266, 1269 (1998)). An invitee is defined as one who enters the premises of another with the owner's express or implied consent for the mutual benefit of the entrant and the owner, or for a purpose connected with the business in which the owner is engaged. *Holzheimer v. Johannesen*, 125 Idaho 397, 400, 871 P.2d 814, 817 (1994).

Wal-Mart concedes that Brooks had the status of an invitee on the Wal-Mart premises. Landowners are charged with a superior knowledge of their premises and the possible dangers located there, as compared with their invitees. *Antim v. Fred Meyer Stores, Inc.*, 150 Idaho 774, 778, 251 P.3d 602, 606 (Ct. App. 2011). Traditionally, there are two kinds of duties a landowner owes to an invitee: "to keep the premises reasonably safe, and to warn of any concealed dangers which the landowner knows of *or should have known of* upon reasonable investigation. . . ." *Stem v. Prouty*, 152 Idaho 590, 594, 272 P.3d 562, 566 (2012) (emphasis added) (citation omitted). Typically a landowner's duty to keep the premises reasonably safe and to warn of hazards arises only when the landowner or occupier "knew, or by the exercise of reasonable care should have known, of the existence of the dangerous condition." *All v. Smith's Management Corp.*, 109 Idaho 479, 481, 708 P.2d 884, 886 (1985) (citing *Tommerup v. Albertson's, Inc*., 101 Idaho 1, 607 P.2d 1055 (1980)).

**B. The trial court erred in granting summary judgment where triable questions of fact existed.**

1. A genuine issue of material fact exists whether or not Wal-Mart should have known of the existence of a dangerous condition by choosing a self-service operating method which required no employee involvement by Wal-Mart.

The trial court found, both at summary judgment and when denying Brooks' motion for reconsideration, that Brooks had failed to establish that Wal-Mart should have known that the Rug Doctor kiosk created a dangerous condition. We disagree.

The trial court analyzed the issue much like the trial court in *All v. Smith's Management Corp.*, *supra*, where the court granted a directed verdict because the plaintiff failed to prove that the defendants "knew of the existence of the specific pothole into which she fell, or how long the pothole was in existence prior to the accident." 109 Idaho at 480–81, 708 P.2d at 885–86. This

Court reversed the trial court's determination, holding that to establish a prima facie case against the owners and possessors of a parking lot, the plaintiff was only required to establish that the owners or possessors had actual or constructive notice of a foreseeable dangerous condition.

Similarly, the trial court here held:

[T]here is no evidence that there was frequently or commonly water or other liquids on the floor near the Rug Doctor kiosk. Therefore, the dangerous condition which allegedly caused Plaintiff's injuries is an isolated incident.

. . . Plaintiff argues that Wal-Mart failed to acquire any knowledge with regard to potential hazards the Rug Doctor machines could cause. The Court does not find that this failure, taking all inferences in Plaintiff's favor, creates constructive knowledge of this hazardous condition. Because the Court is addressing an isolated event, Wal-Mart's constructive knowledge should match the event, not all possible events. Therefore, the fact that Wal-Mart did not make itself aware that Rug Doctor machines could leak does not impute to Wal-Mart the knowledge of the puddle in which plaintiff slipped.

By focusing on Wal-Mart's lack of actual notice in this case, the court overlooked Wal-Mart's possible negligent conduct in purposefully failing to even inquire, in any way, regarding the Rug Doctor machines' potential to leak or otherwise create an unreasonable risk of harm to Wal-Mart's customers. Whether Wal-Mart should have exercised due care to familiarize itself of these risks in its chosen, self-service operation is a triable question of fact that the jury must resolve.

This Court previously made this point in *Tommerup*, wherein we stated:

"The owner is not an insurer of such (invitees) . . . . Nor is there any presumption of negligence on the part of an owner or occupier merely upon the showing that an injury has been sustained by one while rightfully upon the premises. The true ground of liability is the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property. (*Mautino v. Sutter Hospital Associatio*n, 211 Cal. 556, 296 P. 76 (1931))." *Martin v. Brown*, 56 Idaho at 382, 54 P.2d at 1158. (emphasis ours)[.]

Because the true ground of liability is the superior knowledge of the owner or possessor, we fail to see any justification for holding him liable for injury caused by defects about which he had no knowledge, *when the lack of knowledge was not due to a failure by the owner or possessor to use ordinary care*.

101 Idaho at 3–4, 607 P.2d at 1057–58 (emphasis added).

Thus, as a matter of law, Wal-Mart must possess "superior knowledge" of the operating methods utilized in its stores. As noted, the very purpose for the "true ground" of premises

liability mandates that property owners not stick their heads in the sand and simply ignore potential risks to their customers. If that were the case, the superior knowledge which underpins premises law's standards would be merely an illusion. We decline to hold that landowners can purposefully choose to remain ignorant of potential hazards on their property.

As we pointed out above, Wal-Mart and Rug Doctor created an agreement which allowed Wal-Mart to profit from the rental of Rug Doctor machines in its premises, while at the same time failing to gain any knowledge whatsoever about the potential for the Rug Doctor machines to pose a hazard, through leaking water or other substances, to Wal-Mart's customers who traversed the busiest part of the store—the action alley.

On these facts the trial court denied summary judgment for Rug Doctor, finding that

> [w]hile there are many potential sources of the liquid on which Plaintiff slipped, the Court must take the inferences in Plaintiff's favor. . . . This confluence of location, timing and the admission of leaking machines create a circumstantial piece of evidence the Court simply can't disregard or weigh as a scintilla or less. The jury could view the video, hear testimony of the kiosk manager, and consider evidence as to whether the Rug Doctor machine could have leaked at that location and conclude Rug Doctor LLC caused the puddle in which Plaintiff slipped.

Such facts apply similarly to Wal-Mart's failure to educate itself as to foreseeable risks due to its own chosen operating method. "At this point . . . what needs to be proved is [Wal-Mart's] actual or constructive knowledge *of its own operating methods* relating to the . . . foreseeable dangerous condition." *All*, 109 Idaho at 481, 708 P.2d at 886 (emphasis added). Whether Wal-Mart failed to exercise due care when it adopted an automated self-serve rental process for the Rug Doctor machines is a triable question of fact that precluded summary judgment in this case. As such, a jury may have properly considered the following evidence, which is, for our purposes, construed in Brooks' favor:

- Wal-Mart stores are the only locations where a self-service operating method is utilized in the Rug Doctor account manager's territory. Fifty-nine other accounts utilize employees to check-in and check-out such machines;
- The Rug Doctor machines can leak from their nozzles or from the bottom or if hoses break down from normal wear and tear;
- The machines can be returned with water remaining in them, which can spill when machines are lifted, tilted and placed into a shopping cart;
- The rental process for Rug Doctor machines at Wal-Mart is self-serve and unsupervised. Thus, no Wal-Mart employee inspects the machines upon return to determine if they are clean or dirty;

8

- No Wal-Mart employee is responsible to determine if a Rug Doctor machine still had liquid in it when returned;
- The Rug Doctor account manager never provided any training to the Overland Wal-Mart personnel, nor was he ever asked by anyone at that location to provide training;
- Wal-Mart fails to document when or if floor sweeps occur. While employees are trained to be constantly on alert for spills or other hazards, Wal-Mart does not document when or where spills occur, or why.

This case presents the unique circumstance where the landowner placed a product that could potentially leak fluid in the busiest part of its store, and then refused to request any help from the manufacturer regarding training or other information that would alert the landowner to potential safety hazards inherent in the machinery or the operating method that it implemented. Here, in making such a decision, Wal-Mart profited from their sharing arrangement with Rug Doctor. However, Wal-Mart ignored the fact that carpet cleaning machines are not like Red Box[©] DVD kiosks, which can be left alone and ignored. These machines can leak or spill, or come back with water still in them. A jury could have considered whether such actions amounted to a breach of Wal-Mart's standard of care, which required Wal-Mart to be aware of and manage foreseeable hazards, particularly where Wal-Mart sits in a position of superior knowledge vis-à-vis Ms. Brooks. Given these facts, a reasonable jury could have reached the conclusion that Wal-Mart should have known its operating method for managing Rug Doctor machines could have created a dangerous condition.

Wal-Mart argues, and the district court agreed, that this situation presented an isolated incident for which Wal-Mart had no actual or constructive notice as a matter of law. We will not go so far. Whether the incident was isolated or not, Brooks' burden to establish constructive notice is mired in facts that preclude summary judgment against her. "[C]onstructive knowledge is that knowledge which reasonable diligence would have disclosed. . . ." *State v. Carlson*, 50 Idaho 634, 637, 298 P. 936, 937 (1931). Wal-Mart's negligence need not be tied to whether the event in this case was isolated. Like the reference to all potholes in *All*, not just the one the plaintiff fell in, the particular spill at the Overland store is not the sole issue; rather, one question is whether Wal-Mart created a dangerous condition when it placed potentially leaky machines on its premises and then failed to act reasonably in managing those machines. A jury may find that Wal-Mart's actions were not negligent, but it may find that they were. Therefore, the district court's grant of summary judgment is reversed.

2. Brooks is not relieved from establishing that Wal-Mart had constructive notice in this case.

Brooks argues that she is relieved of having to establish that Wal-Mart had constructive notice of the dangers inherent in its operating method. The facts here do not support her argument.

a. Idaho law is settled regarding an invitee's burden in isolated cases.

Brooks argues that the potential dangers from the Rug Doctor machines are so readily apparent as to be "continuous," and/or "easily foreseeable." As such, she opines she is relieved of the duty to prove that Wal-Mart had notice of the dangerous condition at all. We disagree.

This Court has recognized that when the operating methods of a proprietor are such that "dangerous conditions are continuous or easily foreseeable, the logical basis for the notice requirement dissolves" and "actual or constructive notice of the specific condition need not be proved." *All*, 109 Idaho at 481, 708 P.2d at 886. Therefore, under Brooks' theory, she is not required to prove actual or constructive notice of the specific condition. In *All*, we distinguished a plaintiff's obligation to prove constructive notice from continuous or easily foreseeable dangerous conditions. We stated:

> In *Tommerup*, the dangerous condition was a cupcake wrapper which had been discarded near the parking lot. The record was devoid of evidence indicating the condition was anything but an isolated incident. In *Tommerup*, and most recently in *McDonald*, we distinguished the nonrecurring or isolated incident situation—where actual or constructive notice of the specific condition must be shown—from circumstances where the plaintiff shows that the operating methods of the landowner or possessor are such that dangerous conditions are continuous or easily foreseeable.

*All*, 109 Idaho at 481, 708 P.2d at 886 (internal citations omitted). *See also Tommerup*, 101 Idaho at 4, 607 P.2d at 1058 (quoting *Jasko v. F.W. Woolworth Co.*, 177 Colo. 418, 420, 494 P.2d 839, 840 (1972) (en banc) ("the Colorado Supreme Court held defendant's method of selling pizza was one which *led inescapably* to such mishaps as that of the plaintiff.") (emphasis added).

While the jury will consider on remand whether Wal-Mart failed to exercise due care in the way it adopted and managed its operating methods, the facts here do not lead "inescapably" to the conclusion that Brooks' fall was due to continuous spills from the Rug Doctor machines, nor was her fall easily foreseeable as a matter of law. As noted above, the jury may find that

10

Wal-Mart's failure to avail itself of training or other information about the machines is such that Wal-Mart will be deemed to have constructive knowledge of the danger—but this is not the same as ruling as a matter of law that such self-service operations remove Brooks' burden to show constructive notice in cases like this one.

      b. <u>The record here is insufficient to establish that Brooks' fall was more than an isolated occurrence.</u>

" 'The mere presence of a slick or slippery spot on a floor does not in and of itself establish negligence, for this condition may arise temporarily in any place of business. . . . Nor does proof of a slippery floor, without more, give rise to an inference that the proprietor had knowledge of the condition.' " *Tommerup*, 101 Idaho at 4, 607 P.2d at 1058 (quoting *Jasko*, 177 Colo. at 421, 494 P.2d at 840–41.).

The record in the instant case through circumstantial evidence may lead a jury to conclude that the liquid in which Brooks fell came from the Rug Doctor machine due to the rental of a machine by another customer about seven minutes before Brooks' fall. Nevertheless, that alone is insufficient to establish that the condition which caused Brooks' injury was anything other than an isolated incident. Therefore, it remains incumbent upon Brooks to carry her burden of proof as to Wal-Mart's constructive notice.

    3. <u>Issues of fact also preclude summary judgment based on Wal-Mart's constructive notice of the hazardous condition in this case.</u>

Brooks also argues that material issues of fact exist to preclude summary judgment as to Wal-Mart's constructive notice of the spill itself. We agree.

In addition to issues of fact regarding Wal-Mart's imputed constructive notice due to its operating method, Brooks has established a genuine issue of material fact that Wal-Mart had constructive notice of the liquid in front of the Rug Doctor kiosk at the time Brooks fell. Brooks has shown that Wal-Mart associates could have seen the liquid based on their training and clean-as-you-go maintenance policy.

First, video surveillance shows a Wal-Mart employee walking by the area approximately five and a half minutes before Brooks fell. Wal-Mart's floor safety policy requires Wal-Mart associates to be constantly on alert, look for hazards, and correct any hazards quickly. Based on Wal-Mart policy, because an employee walked down the action alley opposite the Rug Doctor kiosk the employee should have discovered the liquid as part of a routine visual sweep of the

11

area.  Viewing this reasonable inference in a light most favorable to Brooks, a jury could find that this Wal-Mart employee, exercising reasonable care, could have discovered the hazard.

Second, the record reflects that the Wal-Mart associate escorting Brooks to the garden center failed to see the liquid and failed to warn her.  Brooks testified as follows:

Q. Did the Walmart [sic] associate that was walking with you ever make a comment about, "Be careful, there's a puddle of water in front of you?"

A. Not a word.

Because Brooks testified she was looking up and around and not at the floor when she fell, Wal-Mart  contends that Brooks should have been watching where she was walking to avoid injury.  While this is certainly a good argument for the jury, such a claim carries little weight at the summary judgment stage.  *See Van Brunt v. Stoddard*, 136 Idaho 681, 690, 39 P.3d 621, 630 (2001) (generally, a plaintiff's conduct affecting his comparative responsibility is a question for the jury).

For Wal-Mart to argue that Brooks should have seen the liquid is to disregard the statement of its own employee who was escorting Brooks.  The associate, presumably trained to spot hazards, failed to notice the liquid on the floor despite the testimony of the store manager that every Wal-Mart employee is trained to watch for safety issues.  The associate stated "I was walking with [Brooks] over to the garden center to help her with a purchase of bark, on our way to garden the customer fell down near the rug doctor.  I saw water on the floor."  It follows that if Brooks should have seen the liquid, then the associate, who is not only more familiar with the store, but also has a higher duty to maintain the premises in a safe condition, should have seen the liquid prior to Brooks' fall.  The presence of two employees in the area creates a legitimate question of fact concerning Wal-Mart's failing to notice the hazard.

Third, as noted above, Hinkle, Wal-Mart's Rug Doctor account manager, stated that there are conditions under which the machines may leak.  He testified, in his experience, "[water] could leak from the tank, [it] could leak from the bottom."  He also agreed that water could leak if "[the machine] is tilted on it's [sic] side or upside down or [the] bottom tank [is] overfilled."  Additionally, he described that Rug Doctor machines could foreseeably leak water in the following ways: from a worn nozzle on the bottom of the machine; from the attachment for the upholstery tool; from a worn coupler; from hoses if not correctly attached; or from an incorrectly installed reservoir bucket.

12

In addition to evidence that suggests it is foreseeable Rug Doctor machines may leak, approximately seven minutes before the incident occurred Wal-Mart's surveillance video shows a customer rented a Rug Doctor machine at or near the exact location where Brooks fell. In the process, the machine had to be tilted back-and-forth so it would fit into a shopping cart. While there are many potential sources of the liquid on which Brooks slipped, we must take the inferences in Brooks' favor and apply the lesser standard of proof required to survive a motion for summary judgment than is required at trial. *Liberty Bankers Life Ins. Co.*, 159 Idaho at 685, 365 P.3d at 1040.

Under this standard, the location of the fall, the timing, and the evidence that Rug Doctor machines can leak creates a genuine issue of material fact that Wal-Mart had constructive notice of the spill in this case.

4. <u>Brooks failed to raise the adoption of foreign law before the district court; therefore, the Court will not consider the issue in this case.</u>

Brooks' argument that this Court adopt Washington law and extend a mode of operation approach to premises liability is an argument raised for the first time on appeal.

Brooks argues that this Court should adopt Washington law to modify the traditional rules of premises liability by bringing them in line with the modern techniques of self-service merchandising. In doing so, Brooks maintains that the notice requirement should be eliminated "if the particular self-service operation of the defendant is shown to be such that the existence of unsafe conditions is reasonably foreseeable." *Pimentel v. Roundup Co.*, 100 Wash. 2d 39, 50, 666 P.2d 888, 893 (1983). This argument is unavailing because Brooks did not ask the district court to adopt Washington's exception to the requirement that she prove actual or constructive notice. "[A]ppellate courts will not consider new arguments raised for the first time on appeal." *English v. Taylor*, 160 Idaho 737, 741, 378 P.3d 1036, 1040 (2016) (internal quotations and citation omitted). Because Brooks did not ask the district court to adopt Washington law she is therefore precluded from asking this Court to do so.

Alternatively, Brooks asks this Court to make new law, holding premises owners responsible for the risks associated with the self-serve operating methods they choose. Brooks asserts that retailers should not be allowed to plead conscious ignorance as a defense when their own operating method leads to an injury on their premises. Insofar as we have discussed Wal-Mart's general duty to exercise ordinary care in being aware of potential risks due to its

13

operating methods, Brooks has prevailed on this point. To the degree that Brooks requests that we make new law and equate the term "easily foreseeable" as a matter of law to allegedly flawed operating methods, we decline to do so. These arguments were likewise not raised below; therefore, we will not consider them for the first time on appeal.

## IV. CONCLUSION

We vacate the district court's order granting summary judgment and remand this case for further proceedings consistent with this Opinion. Costs on appeal are awarded to Appellant.

Chief Justice BURDICK and Justices HORTON and BRODY, CONCUR.

JONES, Justice, dissenting.

I respectfully dissent from the majority's holding that the district court erred in granting summary judgment in favor of Wal-Mart. Specifically, I disagree with the majority's conclusion that there was a material question of fact regarding whether Wal-Mart should have known of the existence of a dangerous condition by using an automated self-serve rental process for the Rug Doctor machines. The majority's holding departs from existing premises liability laws and imposes a new standard for the duty of care owed by landowners that elect to offer self-service operations on their premises. I believe this holding ignores the reality that any item in a store can be construed as "self-service." On a daily basis, stores are inundated with patrons who move items, drop things, spill liquids, or create any number of other hazards. Any of these actions can be done wholly independent of any store employee. Accordingly, I see no need to impose a new standard in instances involving a self-serve kiosk.

"Every person has a general duty to use due or ordinary care not to injure others, to avoid injury to others by any agency set in operation by him, and to do his work, render services or use his property as to avoid such injury." *Stephens v. Stearns*, 106 Idaho 249, 256, 678 P.2d 41, 48 (1984). The duty of care owed to a person depends on their status on the land. *Holzheimer v. Johannesen*, 125 Idaho 397, 399, 871, P.2d 814, 816 (1994). It is undisputed that Ms. Brooks was an invitee in this case. It is well established the standard of care owed to an invitee is "the duty to keep the premises in a reasonably safe condition, or to warn of hidden or concealed dangers." *Id.* at 400, 871 P.2d at 817 (citing *Bates v. Eastern Idaho Reg'l Med. Center*, 114 Idaho 252, 253, 755 P.2d 1290, 1291 (1988)). "To establish a prima facie negligence case, the invitee also must show that the landowner knew, or in the exercise of reasonable care should have known, of the alleged dangerous condition." *Shea v. Kevic Corp.*, 156 Idaho 540, 548, 328

14

P.3d 520, 528 (2014). "For a nonrecurring or isolated incident, the invitee must show actual or constructive notice of the specific condition." *Id*. (internal citation omitted).

The majority distinguishes the circumstances of this case from ordinary premises liability based on the fact that the landowner placed a product that could potentially leak fluid on its property, "and then refused to request any help from the manufacturer regarding training or other information that would alert the landowner to potential safety hazards inherent in the machinery or the operating method that it implemented." In doing so, the majority fails to consider that countless items in a store have the potential to leak fluid or create a hazardous condition in the immediate surrounding area. The fact that a self-service machine was allegedly involved in this case simply does not alter the duty of care that is owed by the owner of the premises.

I would follow existing Idaho law and hold that the duty of care owed by Wal-Mart is "the duty to keep the premises in a reasonably safe condition, or to warn of hidden or concealed dangers." *Holzheimer*, 125 Idaho at 400, 871 P.2d at 817. According to this standard, Ms. Brooks would have been required to establish that Wal-Mart "knew, or in the exercise of reasonable care should have known, of the alleged dangerous condition." *Shea*, 156 Idaho at 548, 328 P.3d at 528; *See also All v. Smith's Mgmt. Corp.*, 109 Idaho 479, 481, 708 P.2d 884, 886 (1985) ("to hold an owner or possessor of land liable for injuries to an invitee caused by a dangerous condition existing on the land, it must be shown that the owner or occupier knew, or by the exercise of reasonable care should have known, of the existence of the dangerous condition.").

However, there was no evidence demonstrating that there were frequent spills from the Rug Doctor machine, or any reason to believe that a spill was imminent. In fact, this was the only spill alleged to have occurred from the Rug Doctor machine. Further, there was no evidence that anyone informed Wal-Mart of the spill, nor was there evidence that any Wal-Mart employee saw the spill and failed to clean it up. Instead, the evidence supports a finding that this was an isolated and unexpected incident. In sum, I see no reason to deviate from traditional premise liability laws merely because Ms. Brooks alleged that the water spilled from a "self-service" kiosk rather than a more traditional source. I believe the district court properly granted summary judgment in favor of Wal-Mart, holding that Ms. Brooks failed to provide evidence that Wal-Mart knew or should have known about the spill in which she slipped. I would affirm.

15